Fulton County Superior Court
***EFILED***TV
Date: 11/5/2020 11:22 AM
Cathelene Robinson, Clerk

# IN THE SUPERIOR COURT OF FULTON COUNTY

## STATE OF GEORGIA

| | |
|---|---|
| QUINETTE (GWENETTE) WESTBROOKS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action File No. |
| | )  2020CV342205 |
| GEORGIA DEPARMENT OF | ) |
| HUMAN SERVICES | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff QUINETTE (QWENETTE) WESTBROOKS (hereinafter "Plaintiff"), by and through undersigned counsel, and hereby files this Complaint for Damages against GEORGIA DEPARTMENT OF HUMAN SERVICES (hereinafter "DHS") on the following grounds: (1) race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (hereinafter referred to as "Title VII"); (2) disability discrimination and retaliation in violation of Title I of the Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12111-12117 (hereinafter referred to as "the ADA"); and, (3) disability discrimination in violation of the Fair Employment Practices Act, as codified at O.C.G.A. §§ 45-19-20 et seq. (hereinafter referred to as "the FEPA").

## JURISDICTION AND VENUE

1.

Pursuant to Art. VI, Sec. II, Par. VI of the Georgia Constitution of 1983, the proper venue in a case against a governmental agency lies in the county where the governmental agency

Copy from re:SearchGA

resides.  The principal offices of DHS are located at 2 Peachtree Street NW, 29th Floor, Atlanta,

Fulton County, Georgia 30303.  Therefore, venue is proper in this Court.

## THE PARTIES

2.

Plaintiff, QUINETTE (QWENETTE) WESTBROOKS (hereinafter "Plaintiff") is

an African-American female individual and citizen of the state of Georgia.  Plaintiff resides at

5033 Nisbet Drive, Macon, Georgia 31206.  Plaintiff identifies as disabled due to several

existing medical conditions, i.e. bursitis, carpal tunnel syndrome, osteoarthritis and tendonitis.

Plaintiff's medical conditions severely limit her ambulatory mobility but do not affect her

essential job duties.

3.

Defendant DHS is a state agency organized under the laws of the State of Georgia whose

principal place of business is in Atlanta, Fulton County, Georgia.  DHS and Bibb County DFCS

employ over 15 employees, one of which is Plaintiff, who was hired to work for the Bibb County

DFCS on February 1, 2006.

## PROCEDURAL HISTORY

4.

Beginning in June of 2015, Plaintiff began asking for a reasonable accommodation due to

her medical conditions.  DHS responded to Plaintiff's request for an accommodation by making

improper medical inquiries of her and her medical providers.  DHS finally accommodated

Plaintiff more than a year after her first request for an accommodation.

Copy from re:SearchGA

5.

On September 25, 2017, Plaintiff filed a pro se employment discrimination lawsuit against DHS under Case No. 5:17-cv-00365-TES. This lawsuit was brought under Title VII and the ADA. (See Exhibit "1"). Plaintiff alleged in her original complaint that Defendant failed to accommodate her disability, that Defendant retaliated against her when she made requests for accommodation, and that she was subjected to disparate treatment because of her race. (See Exhibit "1").

6.

On January 23, 2019, Plaintiff provided deposition testimony in her original lawsuit for employment discrimination. On February 27, 2019, Plaintiff filed an Intake Questionnaire with the EEOC indicating her desire to file a Charge of Discrimination for retaliation. (See Exhibit "2").

7.

In retaliation for engaging in protected activity, specifically, requesting a reasonable accommodation under the ADA, testifying in her first employment discrimination lawsuit, and requesting an additional Notice of Right to Sue for retaliation, DHS demoted Plaintiff and reduced her pay. Specifically, on April 11, 2019, DHS sent Plaintiff a Notice of Demotion from Durell Price, Deputy Field Operations Director, that reduced Plaintiff's pay effective May 1, 2019. (See Exhibit "3").

8.

On May 16, 2019, DHS filed its Motion for Summary Judgment in Case No. 5:17-cv-00365-TES. (See Exhibit "4"). Plaintiff filed a timely on response on June 27, 2019. (See Exhibit "5"). As the parties waited for the District Court's ruling on DHS's Motion for Summary Judgement, Plaintiff continued to seek relief.

Copy from re:SearchGA

9

On July 23, 2019, Plaintiff submitted her Charge of Discrimination to the EEOC.  (See Exhibit "6").  On September 3, 2019, the EEOC issued a Notice of Right to Sue.  (See Exhibit "7").

10.

On November 25, 2019, Plaintiff filed a second federal lawsuit against DHS under Case No. 5:19-cv-00465-TES.  (See Exhibit "8").

11.

Exactly seven months after the Motion for Summary Judgment was filed, on January 27, 2020, the District Court entered an Order Granting Defendant's Motion for Summary Judgment based on the doctrine of Eleventh Amendment immunity in Case No.  5:17-cv-00365-TES.  (See Exhibit "9").

12.

On May 7, 2020, Plaintiff dismissed her second federal lawsuit against DHS without prejudice, i.e. Case No. 5:19-cv-00465-TES.  (See Exhibit "10").

13.

Plaintiff now files this renewal action on Case No. 5:19-cv-00465-TES, pursuant to O.C.G.A. § 9-11-41 and § 9-2-61(a), within six months of the dismissal that case.

14.

No bill of costs was entered in Case No. 5:19-cv-00465-TES.

## **FACTUAL BACKGROUND**

### **Plaintiff's requests for accommodations pursuant to the ADA**

Copy from re:SearchGA

15.

In September of 2019, at the request of Defendant, Plaintiff provided Defendant with a letter from her doctor, Dr. William S. Barnes of Piedmont Orthopedic Complex dated September 19, 2019, stating that Plaintiff can return to *regular duty at work* and requesting that she be accommodated with a stand-up desk.  (See Exhibit "11").

16.

On September 24, 2019, Plaintiff received correspondence from Latoya Anthony, Human Resource Specialist, informing her that her request for a stand-up desk could affect her essential job duties and requiring Plaintiff to complete and return two forms: (1) Certification of Serious Health Condition Form and (2) the ADA Job Functionality Form.  (See Exhibits "12" and "13").

17.

Ms. Anthony clearly stated that satisfying Plaintiff's request for an accommodation was conditioned upon the completion of these forms.  (See Exhibits "12" and "13").

18.

Plaintiff has completed these forms.  However, to date, Plaintiff's request to be reasonably accommodated with a stand-up desk as required pursuant to the ADA has not been satisfied.

**Defendant's improper medical inquiries in violation of the ADA**

19.

At the request of Defendant, Plaintiff provided Defendant with a letter from her doctor, Dr. William S. Barnes of Piedmont Orthopedic Complex dated September 19, 2019, stating that Plaintiff could return to *regular duty at work* and requesting that she be accommodated with a stand-up desk.  (See Exhibit "11").

Copy from re:SearchGA

20.

On September 24, 2019, Plaintiff received correspondence from Latoya Anthony, Human

Resource Specialist, stating the following:

> *This letter is in response to an email notification to Compliance Management that you may have a health condition which may impact the performance of your essential job duties. In order to accurately document your health condition, you are to have your attending health care provider complete the attached Certification of Serious Health Condition Form and the ADA Job Functionality Form and forward to this office as soon as possible. It should be noted that your Manager must have documentation on file from your healthcare provider which verifies your health condition and provides information on those items that could potentially negatively affect your work performance and/or prevent you from fulfilling your current job duties and responsibilities. Once you have submitted the completed documents from your healthcare provider, they will be reviewed in compliance with DHS Policy #1704 to determine consideration for a reasonable accommodation.*

(See Exhibit "12" and "13").

21.

DHS has adopted a formal policy, Human Resources Personnel Policy #1703, that

directly violates the ADA and states as follows:

Section C: PROCEDURES

4. Modified duty assignments require a signed medical statement from the attending health care provider, which identifies any work-related limitations and the expected length of time for the limitations.

4.1 If additional information is needed, employees will be given the ATTENDING PHYSICIAN'S STATEMENT OF FUNCTIONAL CAPABILITY Form to be completed by the attending health care provider…

Section E: EXPIRATION OF MODIFIED DUTY ASSIGNMENT

1. At the expiration of modified duty assignments, employees will be returned to regular duties and responsibilities with or without reasonable accommodation if approved by the attending health care provider.

(See Exhibit "14").

6

Copy from re:SearchGA

22.

DHS Personnel Policy # 1703 is a per se violation of the ADA in that it mandates a signed medical statement from an attending health care provider identifying any work-related limitations of the employee and the expected length of time for the limitations.

**Changes in Plaintiff's work status including
Plaintiff's demotion and reduction in pay**

23.

On April 5, 2018, an email was sent to several of Plaintiff's CAPS department coworkers advising them that they were permitted to take a voluntary demotion with no reduction in pay and without taking on any additional programs.  (See Exhibit "15").  Plaintiff did not receive this email.  The email was shared with Plaintiff by a coworker.

24.

These CAPS department employees were required to work only one program, Medicaid.

25.

While Plaintiff's co-workers were allowed to only work one program, Medicaid, and keep their same pay, Plaintiff was required to work three programs: (1) Medicaid, (2) Food Stamps, and (3) Adult Medicaid or risk adverse consequences including a pay reduction up to termination.  (See Exhibit "16").

26.

On April 2, 2018, Plaintiff received an email from Teresa B. Johnson, HR Generalist, South Region, indicating that because Plaintiff was already classified as an OFI Economic Support Specialist 3, she would have no reduction in pay.  (See Exhibit "17").

27.

On April 11, 2019, Plaintiff received a Notice of Demotion from Durell Price, Deputy

Copy from re:SearchGA

Field Operations Director, citing as the reason for the demotion the fact that she made a "decision to maintain a work profile that includes only two Office of Family Independence (OFI) programs."  (See Exhibit "3").

28.

According to this Notice of Demotion, Plaintiff's decrease in pay was to take effect on May 1, 2019.  Plaintiff's salary at the time of her deposition on January 23, 2019 was thirty-four thousand six hundred eighty dollars ($34,680.00).  Plaintiff's salary reflecting this demotion was thirty-two thousand one hundred seventy dollars and ninety cents without merit increases ($32,170.90).  (See Exhibits "18" and "19").

29.

The Defendant's reasons for demoting the Plaintiff are without merit and are a pretext for unlawful discrimination.

## <u>COUNT I</u>

### DISABILITY DISCRIMINATION
### IN VIOLATION OF THE ADA

30.

Paragraphs 4 through 29, Procedural History and Factual Background, above, are hereby incorporated as though each of the factual allegations was restated herein.

31.

Congress enacted the ADA in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities[.]" 42 U.S.C. § 12101(b)(1).  It found that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against

8

Copy from re:SearchGA

individuals with disabilities continue to be a serious and pervasive social problem[.]" 42 U.S.C. § 12101(a)(2).

32.

Title I of the ADA provides that no covered employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a).

33.

To establish a prima facie case of employment discrimination under the ADA, a plaintiff must show that: (1) she has a disability; (2) she is a qualified individual with or without a reasonable accommodation; and (3) she was discriminated against because of her disability. *Id; Holly v. Clairson Industries, LLC,* 492 F.3d 1247, 1255-56 (11th Cir. 2007); *Pritchard v. Southern Co. Services,* 92 F.3d 1130, 1132 (11th Cir. 1996); *See* 42 U.S.C. §12132.

34.

Plaintiff identifies as disabled due to several existing medical conditions, i.e. bursitis, carpal tunnel syndrome, osteoarthritis and tendonitis.  Plaintiff's medical conditions severely limit her ambulatory mobility but do not affect her essential job duties.

35.

At all times relevant to the allegations of Plaintiff's original employment discrimination complaint and this Complaint, the Plaintiff's disabilities were known by, and made known to her employer by the Plaintiff.

Copy from re:SearchGA

36.

Plaintiff was otherwise qualified to perform her job-related duties as her most recent performance evaluation from July 1, 2018 to June 30, 2019 rated her a "Successful Performer"and found that she met expectations for the performance period.  (See Exhibit "20").

37.

The Eleventh Circuit has held pursuant to the ADA that an employer's failure to reasonably accommodate an "otherwise qualified" disabled employee itself constitutes unlawful discrimination.

38.

Despite Plaintiff's status as an "otherwise qualified" disabled employee, DHS blatantly failed to reasonably accommodate Plaintiff as recently as September 24, 2019, just a few weeks after the Notice of Right to Sue was executed by the EEOC.

## COUNT II

**DISPARATE TREATMENT DISCRIMINATION
IN VIOLATION OF TITLE VII**

39.

Paragraphs 4 through 29, Procedural History and Factual Background, above, are hereby incorporated as though each of the factual allegations was restated herein

40.

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin…" 42 U.S.C. § 2000e-2(a)(1).

Copy from re:SearchGA

41.

When a plaintiff relies on circumstantial evidence to prove discrimination under Title VII, the court employs a burden-shifting analysis, under which the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Crawford v. Carroll*, 529 F.3d 961, 975-76 (11th Cir. 2008); *see Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181-82 (11th Cir. 2010).

42.

To establish a prima facie case under Title VII, and thus raise an inference of discriminatory intent, the plaintiff must show: (1) she is a member of a protected class; (2) she was qualified for the job in question; (3) she was subjected to an adverse employment action; and, (4) her employer treated similarly situated employees outside her class more favorably. *See Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003); *see Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 769 (11th Cir. 2005).

43.

Plaintiff is a member of a protected class because she is an African-American woman.

44.

Plaintiff was qualified to perform her job-related duties as her performance evaluation from July 1, 2018 to June 30, 2019 rated her a "Successful Performer" and found that she met expectations for the performance period. (See Exhibit "20").

45.

Plaintiff's involuntary demotion from OFI Economic Support Specialist 3 to OFI Economic Support Specialist 2 and the resulting pay reduction is an adverse employment action that took effect on May 1, 2019.

Copy from re:SearchGA

46.

Similarly situated coworkers who were offered a voluntary demotion from OFI Economic

Support Specialist 3 to the position of OFI Economic Support Specialist 1 without a change in

pay and were treated more favorably than Plaintiff.

## **COUNT III**

### **RETALIATION IN VIOLATION OF THE ADA AND TITLE VII**

47.

Paragraphs 4 through 29, Procedural History and Factual Background, above, are hereby

incorporated as though each of the factual allegations was restated herein.

48.

The ADA and Title VII prohibit retaliation against an employee "because [s]he has

opposed any practice made an unlawful employment practice by [Title VII and the ADA], or

because [s]he has made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing [thereunder]." 42 U.S.C. § 2000e-3(a).

49.

To establish a prima facie case of retaliation under the ADA and Title VII under the

burden-shifting framework, and to raise an inference of discriminatory intent, the plaintiff must

show that: (1) she engaged in statutorily protected conduct; (2) she experienced a materially

adverse employment action; and (3) there is a causal connection between the protected activity

and the adverse employment action. *Gilliard v. Ga. Dep't of Corr.* (11th Cir. 2012); *Stewart v.

Happy Herman's Chesire Bridge, Inc.,* 117 F.3d 1278 (11th Cir. 1997); *Hurlbert v. St. Mary's

Health Care Sys., Inc.,* 439 F.3d 1286, 1297 (11th Cir. 2006).

Copy from re:SearchGA

50.

Plaintiff engaged in statutorily protected conduct by filing the original employment discrimination lawsuit on September 25, 2017.  Plaintiff further engaged in statutorily protected conduct on January 23, 2019 when she testified at her deposition in the original employment discrimination lawsuit.  On February 27, 2019, Plaintiff engaged in statutorily protected conduct when she filed an EEOC Intake Questionnaire stating that Defendant threatened to demote her and reduce her pay in retaliation for her filing of the original employment discrimination lawsuit. On July 23, 2019, Plaintiff engaged in statutorily protected conduct when she filed a Charge of Discrimination.

51.

On April 11, 2019, DHS sent Plaintiff a Notice of Demotion demoting her from an OFI Economic Support Specialist 3 to an OFI Economic Support Specialist 2.  This Notice reduced Plaintiff's pay effective May 1, 2019.  (See Exhibit "3").  The Notice of Demotion constitutes an adverse employment action.

52.

DHS's actions to demote Plaintiff and reduce her pay constitute prohibited retaliation for engaging in protected activity entitling the Plaintiff to compensation and damages as allowed by the ADA and Title VII.

53.

On September 3, 2019, Plaintiff further engaged in statutorily protected conduct when she received a Notice of Right to Sue.  (See Exhibit "7").

54.

On September 19, 2019, at the request of DHS, Plaintiff provided a letter from her doctor indicating that she could return *regular duty at work* and requesting that she be accommodated

13

Copy from re:SearchGA

with a stand-up desk.  (See Exhibit "11").

55.

On September 24, 2019, Plaintiff received correspondence from Latoya Anthony, Human Resource Specialist, informing her that her request for a stand-up desk could affect her essential job duties and requiring Plaintiff to complete and return two forms in order to receive the accommodation requested: (1) Certification of Serious Health Condition Form and (2) the ADA Job Functionality Form.  (See Exhibits "12" and "13").

56.

Ms. Anthony clearly stated that satisfying Plaintiff's request for a reasonable accommodation was conditioned upon the completion of these forms.  (See Exhibits "12" and "13").

57.

To date, Plaintiff's request to be reasonably accommodated with a stand-up desk as required pursuant to the ADA has not been satisfied.

58.

DHS's refusal to reasonably accommodate Plaintiff constitutes prohibited retaliation for engaging in protected activity entitling the Plaintiff to compensation and damages as allowed by the ADA and Title VII.

**<ins>COUNT IV</ins>**

**IMPROPER MEDICAL INQUIRIES
IN VIOLATION OF THE ADA**

59.

Paragraphs 4 through 29, Procedural History and Factual Background, above, are hereby

14

Copy from re:SearchGA

incorporated as though each of the factual allegations was restated herein.

60.

The ADA provides that "[a] covered entity ... shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A).

61.

Medical inquiries for the purpose of justifying an accommodation for a qualified employee are prohibited where the employee is otherwise qualified to perform her job-related functions.

62.

It is undisputed that Plaintiff was otherwise qualified to perform her job-related duties as her performance evaluation during the relevant time period, July 1, 2018 to June 30, 2019, rated her as a "Successful Performer" and found that "Mrs. Westbrooks met expectations for this performance period." (See Exhibit "20").

63.

From September 19, 2019 to the present, instead of satisfying Plaintiff's request for a reasonable accommodation, DHS has spent the time making improper medical inquiries into Plaintiff's disabilities in violation of the ADA.

64.

DHS has openly made demands upon Plaintiff that she produce her medical records and the specific type of accommodation needed in order to prove her disability.

Copy from re:SearchGA

65.

In fact, DHS has used its medical records requests to delay—if not outright deny—the grant of Plaintiff's reasonable accommodation requests.

66.

DHS has adopted a formal policy, Human Resources Personnel Policy #1703, that directly violates the ADA and states as follows:

> Section C: PROCEDURES
>
> 4.   Modified duty assignments require a signed medical statement from the attending health care provider, which identifies any work-related limitations and the expected length of time for the limitations.
>
> 4.1   If additional information is needed, employees will be given the ATTENDING PHYSICIAN'S STATEMENT OF FUNCTIONAL CAPABILITY Form to be completed by the attending health care provider…
>
> Section E: EXPIRATION OF MODIFIED DUTY ASSIGNMENT
>
> 1.   At the expiration of modified duty assignments, employees will be returned to regular duties and responsibilities with or without reasonable accommodation if approved by the attending health care provider.

(See Exhibit "14").

67.

DHS's medical inquiries delayed reasonable accommodations for Plaintiff and resultingly caused her medical condition to worsen.

68.

Plaintiff is entitled to damages due to DHS's improper medical inquiries into her medical condition.

Copy from re:SearchGA

## <u>COUNT V</u>

### DISABILITY DISCRIMINATION
### IN VIOLATION OF FEPA

69.

Paragraphs 4 through 29, Procedural History and Factual Background, above, are hereby incorporated as though each of the factual allegations was restated herein.

70.

The Fair Employment Practices Act states that it is an unlawful practice for an employer to "discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, national origin, sex, disability, or age." O.C.G.A. § 45-19-29(1).

71.

The Fair Employment Practices Act also states that it is an unlawful practice for an employer to "limit, segregate, or classify his employees in any way which would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect an individual's status as an employee because of such individual's race, color, religion, national origin, sex, disability, or age."  O.C.G.A. § 45-19-29(2).

72.

At all times relevant to the allegations of Plaintiff's original employment discrimination complaint and this Complaint, the Plaintiff's disabilities and age were known by, and made known to her employer by the Plaintiff.

73.

Plaintiff was otherwise qualified to perform her job-related duties as her most recent performance evaluation from July 1, 2018 to June 30, 2019 rated her a "Successful

17

Copy from re:SearchGA

Performer" and found that she met expectations for the performance period.  (See Exhibit "20").

74.

On April 5, 2018, an email was sent to several of Plaintiff's CAPS department coworkers advising them that they were permitted to take a voluntary demotion with no reduction in pay and without taking on any additional programs.  (See Exhibit "15").

75.

On April 2, 2018, Plaintiff received an email from Teresa B. Johnson, HR Generalist, South Region, indicating that because Plaintiff was already classified as an OFI Economic Support Specialist 3, she would have no reduction in pay.  (See Exhibit "17").

76.

Nevertheless, on April 11, 2019, Plaintiff received a Notice of Demotion from Durell Price, Deputy Field Operations Director, involuntarily demoting Plaintiff from an OFI Economic Support Specialist 3 to an OFI Economic Support Specialist 2.  (See Exhibit "3").  The Notice of Demotion cited as the reason for the demotion the fact that Plaintiff made a "decision to maintain a work profile that includes only two Office of Family Independence (OFI) programs."  (See Exhibit "3").

77.

According to this Notice of Demotion, Plaintiff's decrease in pay was to take effect on May 1, 2019.  (See Exhibit "3").  Plaintiff's salary dropped from thirty-four thousand six hundred eighty dollars ($34,680.00) to thirty-two thousand one hundred seventy dollars and ninety cents without merit increases ($32,170.90).  (See Exhibits "18" and "19").

18

Copy from re:SearchGA

## COUNT VI

### RETALIATION IN VIOLATION OF FEPA

78.

Paragraphs 4 through 29, Procedural History and Factual Background, above, are hereby incorporated as though each of the factual allegations was restated herein.

79.

The Fair Employment Practices Act states that it shall be an unlawful practice punishable by a civil fine for a person willfully to "retaliate or discriminate in any manner against a person because the person has opposed a practice declared unlawful by this article or because the person has made a charge filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing concerning an unlawful practice under this article." O.C.G.A. § 45-19-44(a)(2).

80.

Plaintiff engaged in statutorily protected conduct by filing the original employment discrimination lawsuit on September 25, 2017. Plaintiff further engaged in statutorily protected conduct on January 23, 2019 when she testified at her deposition in the original employment discrimination lawsuit. On February 27, 2019, Plaintiff engaged in statutorily protected conduct when she filed an EEOC Intake Questionnaire stating that Defendant threatened to demote her and reduce her pay in retaliation for her filing of the original employment discrimination lawsuit. On July 23, 2019, Plaintiff engaged in statutorily protected conduct when she filed her second Charge of Discrimination.

81.

On April 11, 2019, DHS sent Plaintiff a Notice of Demotion demoting her from an OFI Economic Support Specialist 3 to an OFI Economic Support Specialist 2. This Notice reduced

Copy from re:SearchGA

Plaintiff's pay effective May 1, 2019.  (See Exhibit "3").  The Notice of Demotion constitutes a retaliatory action resulting from Plaintiff's opposition to a practice deemed unlawful by the FEPA.

82.

DHS's actions to demote Plaintiff and reduce her pay constitute prohibited retaliation for engaging in protected activity and entitle Plaintiff to compensation and damages as allowed by FEPA.

83.

On September 3, 2019, Plaintiff further engaged in statutorily protected conduct when she received a Notice of Right to Sue.  (See Exhibit "7").

84.

DHS immediately retaliated by making it impossible for Plaintiff to obtain a stand-up desk or time off to complete physical therapy, both of which were requested in compliance with the ADA.  (See Exhibits "12" and "13").

**WHEREFORE,** Plaintiff respectfully urges this Court to find against Defendant Georgia Department of Human Services, based upon the above referenced violations of Plaintiff's civil and constitutional rights under, 42 U.S.C. §§ 2000e to 2000e-17, 42 U.S.C. §§ 12112 to 12117, and O.C.G.A. §§ 45-19-20 et seq., and to award the following relief and damages:

a)     That the Court issue a declaratory judgment finding that the Defendant's formally adopted policies requiring an employee to provide medical documentation of his/her disability and the specific type of workplace accommodation needed, is in violation of the ADA;

b)     That the Court enjoin the Defendant from continuing to engage in unlawful

Copy from re:SearchGA

employment practices whereby its employees are required to respond to medical inquires prior to being reasonably accommodated with their workplace disabilities;

c)      That the Court restore Plaintiff's job title to what it would have been had Defendant not demoted Plaintiff effective on May 1, 2019;

d)      That the Plaintiff have and recover general and compensatory damages in an amount to be determined at trial;

e)      That the Plaintiff have and recover back pay, with interest, and where, and if appropriate, front pay, in amounts to be determined at trial;

f)      That the Plaintiff have and recover her attorney's fees and costs; and

g)      That the Court issue such other and further relief as this honorable Court deems just and necessary.

## **JURY TRIAL DEMANDED**

Plaintiff respectfully demands a trial by jury on all issues so triable.

This 5th day of November 2020.

Respectfully submitted,

**WAYNE B. KENDALL, P.C.**

*/s/ Wayne B. Kendall*
Georgia Bar No.: 414076
wbkendall2@yahoo.com


*/s/ Kimberly A. Ellison*
Georgia Bar No.: 141716
kimberly@waynebkendallpc.com

*Attorneys for Plaintiff*

155 Bradford Square, Suite B
Fayetteville, Georgia 30215
Telephone: (770) 778-8810
Facsimile: (770) 716-2439

21

Copy from re:SearchGA

# *EXHIBIT "1"*

Copy from re:SearchGA

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

# UNITED STATES DISTRICT COURT

for the

Middle District of Georgia

__Macon Division

| | | |
|---|---|---|
| Quinette (Gwenette) Westbrooks | ) | Case No.  **5 : 17-CV- 365** |
| | ) | *(to be filled in by the Clerk's Office)* |
| | ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | Jury Trial: *(check one)*  ☑Yes  ☐No |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | |
| *please write "see attached" in the space and attach an additional* | ) | |
| *page with the full list of names.)* | ) | |
| -v- | ) | |
| | ) | |
| DHS-DFCS Urban Co, Bibb County Macon, Shannon | ) | |
| Fields, Valerie Stewart | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued. If the* | | |
| *names of all the defendants cannot fit in the space above, please* | | |
| *write "see attached" in the space and attach an additional page* | | |
| *with the full list of names.)* | | |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

I. **The Parties to This Complaint**

   A. **The Plaintiff(s)**

   Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

   | | |
   |---|---|
   | Name | Quinette (Gwenette) Westbrooks |
   | Street Address | 5033 Nisbet Drive |
   | City and County | Macon |
   | State and Zip Code | Georgia  31206 |
   | Telephone Number | 478-390-7759 |
   | E-mail Address | gwenettewestbrooks@att.net |

   B. **The Defendant(s)**

   Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Page 1 of 6

Copy from re:SearchGA

**Defendant No. 1**

| | |
|---|---|
| Name | DHS-DFACS Urban Co- Bibb County , Macon |
| Job or Title *(if known)* | Government Agency |
| Street Address | 456 Oglethorpe Street |
| City and County | Macon/ Bibb |
| State and Zip Code | Georgia 31201 |
| Telephone Number | (478) 751-3112 |
| E-mail Address *(if known)* | |

**Defendant No. 2**

| | |
|---|---|
| Name | Valerie Stewart |
| Job or Title *(if known)* | Building Manager/Purchaser |
| Street Address | 456 Oglethorpe Street |
| City and County | Macon/ Bibb |
| State and Zip Code | Georgia 31206 |
| Telephone Number | (478) 751-3112 |
| E-mail Address *(if known)* | |

**Defendant No. 3**

| | |
|---|---|
| Name | Shannon Fields |
| Job or Title *(if known)* | County Director |
| Street Address | 456 Oglethorpe Street |
| City and County | Macon/ Bibb |
| State and Zip Code | Georgia 31201 |
| Telephone Number | (478) 751-3112 |
| E-mail Address *(if known)* | |

**Defendant No. 4**

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Copy from re:SearchGA

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

### C.    Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Bibb County Department of Family and Children Services |
| Street Address | 456 Oglethorpe Street |
| City and County | Macon/ Bibb |
| State and Zip Code | Georgia 31201 |
| Telephone Number | (478) 751-3112 |

## II.    Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☑    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note:  In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Other federal law *(specify the federal law)*:

☐    Relevant state law *(specify, if known)*:

☐    Relevant city or county law *(specify, if known)*:

Copy from re:SearchGA

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- [ ] Failure to hire me.
- [ ] Termination of my employment.
- [ ] Failure to promote me.
- [x] Failure to accommodate my disability.
- [x] Unequal terms and conditions of my employment.
- [x] Retaliation.
- [ ] Other acts *(specify)*: _____

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B. It is my best recollection that the alleged discriminatory acts occurred on date(s)

2015 and continuing

C. I believe that defendant(s) *(check one)*:

- [x] is/are still committing these acts against me.
- [ ] is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- [x] race _____
- [ ] color _____
- [ ] gender/sex _____
- [ ] religion _____
- [ ] national origin _____
- [ ] age *(year of birth)* _____ *(only when asserting a claim of age discrimination.)*
- [x] disability or perceived disability *(specify disability)*

limited walking due to osteoarthiritis , possible recent 🔲

E. The facts of my case are as follows. Attach additional pages if needed.

Page 4 of 6

Copy from re:SearchGA

Around December 2016 Plaintiff was placed in an area where there was no heat due to renovation. Plaint suffers from Osteoarthritis , and was under  treatment by a physician  denial of accommodation resulted in extensive treatment,  of series of injections in her knee , fluid aspirated from her knee for 6 weeks that caused Plaintiff difficulty in walking and a tear in the meniscus from degenerative disease, a bakers cyst from inflammation.  Surgery has been recommended to Plainiff. Plaintiff asked to be placed in a warmer area and was denied, Plaintiff requested that her printer be returned to her office until she was move back into her original office due to her inability to barley walk, that resulted in Plaintiff using a walking cane .  Plaintiff printer was denied to be returned to her which  resulted in Plaintiff having to walk

*(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.  Exhaustion of Federal Administrative Remedies

A.  It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

March, 2017

B.  The Equal Employment Opportunity Commission *(check one)*:

☐  has not issued a Notice of Right to Sue letter.

☑  issued a Notice of Right to Sue letter, which I received on *(date)*   **After 6/28/17** .

*(Note:  Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.  Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐  60 days or more have elapsed.

☐  less than 60 days have elapsed.

## V.  Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Copy from re:SearchGA

 Plaintiff was issued a handicap decal due to her limited walking ability walk from  a previous surgery
through April 2016, until new law went into effect.  Plaintiff employers were aware of if handicap decal.
Plaintiff was made walk to another floor daily all through the day to obtain her work assignments for
five (5) months and sometimes from two different printers when there were other offices on the floor
where her work was faxed to. The County Director Shannon Fields  a black female  and a white female
building manager Valerie Stewart retaliated against Plaintiff by placing her in an area  in December 2016
where there was no heat during renovation  after  State Human Resources placed  Plaintiff in  warmer
area  in July 2016 against  Shannon Field and Valerie Stewart refusal  to accommodate Plaintiff to  a
warmer area  for more than a year. Plaintiff was placed in Physical Therapy from June 2016 to July 2016
due to coldness causing  Plaintiff 's medical condition to worsen and was given a physician statement to
keep Plaintiff out of a cold environment from two different physicians.  July 2016 after physical therapy
Plaintiff  printer was taken  by Valerie Stewart knowing Plaintiff walking condition and was not given
back to her by Ms. Valerie Stewart, but she allowed other employees with no medical problems  to keep
their printers until April 2017 after client filed a workers compensation claim. Valerie Stewart retaliated
against Plaintiff because  she had reported to  her that they had allowed the handicap accessibility door
stay broken until the State Administrators came to the office and after they left the handicap
accessibility door became  broken again the  next day where  Plaintiff and another African American
employee that was  disabled e that walked with a walker  with other employees had to  walk out of the
way to get to our desk, the door was closer to our desk.   The African American lady that was on a
walker desk was about two cubicles from the door. A white female that walks with a walker was
accommodated by moving her from the third floor to the first floor in order for her to be closer the door
where she parked in a handicap parking place, and Valerie Stewart has also allowed the white female to
keep her printer, when she took Plaintiff printer in July 2016, that s said  that no one should have a
printer at their desk.  The same white female was moved in the same office that Plaintiff was moved
into in December 2016 sometime in June or July 2017 and was allowed to keep her printer in her office
so she wouldn't have to walk because she is on a walker and the fax on the first floor don't have the
capability to receive faxes the same as Plaintiff set up was. Valerie Stewart discriminated against Plaintiff
due to her disability and because of her race, because she allowed persons without a disability to keep
their printers at their desk after she retrieved my printer and allowed a white female that uses a walker
to keep her printer so she will not have to walk to the printer. Shannon Fields the County Director
continue to retaliate against Plaintiff after Plaintiff  was moved back after the renovation even after she
was made aware that Plaintiff  was going to have surgery on her knee she would not move Plaintiff  in
the area where Plaintiff  daily  work is faxed .  She continue to make Plaintiff walk unnecessary, when
there were three vacant offices in my department. Valerie Stewart has sworn under oath that  she knew
Plaintiff had a handicap parking decal  and that she has seen Plaintiff  on a walking cane.  Shannon Field
has testified under oath that Valerie Stewart normally makes the decisions on managing the building
when it comes to maintaining the building, and also testified  that she is not really familiar with
Americans with Disabilities, even so  all employees  including her self are required to take the training
every year.

Copy from re:SearchGA

punitive damages , reimbursements for any and all monies Plaintiff paid, attorney fees if applicable , pain and suffering . The maximum relief , to continue my employment until my retirement date.

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:      09/25/2017

Signature of Plaintiff

Printed Name of Plaintiff      Quinette (Gwenette) Westbrooks

### B. For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

Copy from re:SearchGA

*EXHIBIT "2"*

Copy from re:SearchGA

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## INTAKE QUESTIONNAIRE

Please immediately complete the entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). **REMEMBER**, a charge of employment discrimination must be filed within the time limits imposed by law, generally within 180 days or in some places 300 days of the alleged discrimination. Upon receipt, this form will be reviewed to determine EEOC coverage. **Answer all questions as completely as possible, and attach additional pages if needed to complete your response(s). If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "n/a." Please Print.**

**1.   Personal Information**

Last Name: _Westbrooks_     First Name: _Gwenette_     MI: _D_

Street or Mailing Address: [ ]                          Apt Or Unit #:

City:                County:           State:           ZIP:

Phone Numbers: Home: (478) 788-5729          Work: (478) 757-3178

Cell: (478) 390-2759        Email Address:

Date of Birth: _6/28/1962_   Sex: Male ☐  Female ☑   Do You Have a Disability?  ☑ Yes  ☐ No

**Please answer each of the next three questions.**    i. Are you Hispanic or Latino?    ☐ Yes  ☑ No

ii. What is your Race? Please choose all that apply.   ☐ American Indian or Alaska Native   ☐ Asian   ☐ White

☑ Black or African American     ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)?

**Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:**

Name: _Michael Westbrook_      Relationship: _Husband_

Address:              City:           State: [ ] Zip Code: [ ]

Home Phone: (478) 788-5729  Other Phone: (478) 390-7729

**2. I believe that I was discriminated against by the following organization(s):** (Check those that apply)

☑ Employer   ☐ Union   ☐ Employment Agency   ☐ Other (Please Specify) _Stephen Perdue_

**Organization Contact Information** (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported.) **If more than one employer is involved, attach additional sheets.**

Organization Name: _Bibb County Department of Family & Children Service DFCS_

Address: _456 Oglethorpe St_           County: _Bibb_

City: _Macon_      State: _GA_  Zip: _31201_     Phone: (___)

Type of Business: _____   Job Location if different from Org. Address: _____

Human Resources Director or Owner Name: _____          Phone: _____

Number of Employees in the Organization at All Locations: Please Check (√) One

☐ Fewer Than 15   ☐ 15 - 100   ☐ 101 - 200   ☑ 201 - 500   ☐ More than 500

**3.  Your Employment Data** (Complete as many items as you can)   Are you a Federal Employee?  ☐ Yes  ☑ No

Date Hired: _2/1/2006_      Job Title At Hire: _Case Manager_

Pay Rate When Hired:          Last or Current Pay Rate: _3/2017_

Job Title at Time of Alleged Discrimination: _Case Manager_  Date Quit/Discharged:

Name and Title of Immediate Supervisor: _Tanith Bryant_

**3**

Of the persons in the same or similar situation as you, who was treated ~~worse~~ *Better* than you?

| A. Full Name | Race, sex, age. national origin, religion or disability | Job Title |
|---|---|---|
| _Diane Walker_ | _Retaliation Black fem_ | _Eminence Support Specialist_ |
| Description of Treatment | | |

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| _Lorraine Thorpe_ | _Black female_ | _Eminence Support Specialist_ |
| Description of Treatment | | |

Of the persons in the same or similar situation as you, who was treated the *same* as you?

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |
| Description of Treatment | | |

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |
| Description of Treatment | | |

Answer questions 9-12 **only** if you are claiming discrimination based on disability. If not, skip to question 13. Please tell us if you have more than one disability. Please add additional pages if needed.

9. **Please check all that apply:**

☑ Yes, I have a disability

☐ I do not have a disability now but I did have one

☐ No disability but the organization treats me as if I am disabled

10. **What is the disability that you believe is the reason for the adverse action taken against you?** Does this disability prevent or limit you from doing anything? (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).

11. **Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?**

Yes ☑  No ☐

If "Yes," what medication, medical equipment or other assistance do you use?

_Medication for Inflammation, Injections,_

12. **Did you ask your employer for any changes or assistance to do your job because of your disability?**

Yes ☑  No ☐

If "YES", when did you ask? _2015_     How did you ask (verbally or in writing)? _Writing_

Who did you ask? (Provide full name and job title of person)
_Shannon Wells_

Describe the changes or assistance that you asked for:

How did your employer respond to your request?

Copy from re:SearchGA

4

13. Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)

| A. Full Name | Job Title | Address & Phone Number |
|---|---|---|
| Elizabeth McKinne, | Supervison | |

What do you believe this person will tell us?

| Provide Information About Pay difference from other co-workers | | |
|---|---|---|
| B. Full Name | Job Title | Address & Phone Number |

What do you believe this person will tell us?

14. Have you filed a charge previously in this matter with EEOC or another agency?    Yes ☑  No ☐

15. If you have filed a complaint with another agency, provide name of agency and date of filing:

16. Have you sought help about this situation from a union, an attorney, or any other source?   Yes ☑  No ☐
Provide name of organization, name of person you spoke with and date of contact. Results, if any?

Attorney Wayne Kendall

Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire. If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws. If you do not file a charge of discrimination within the time limits, you will lose your rights. If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2.

Box 1   ☐ I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time.

Box 2   I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination ☑ information about the charge, including my name. I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

Signature                                    Today's Date  February 27 2019

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:
1. FORM NUMBER/TITLE/DATE. EEOC Intake Questionnaire (9/20/08).
2. AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626, 42 U.S.C. 12117(a), 42 USC §2000ff-6.
3. PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge.
4. ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate, as necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters
5. WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Providing of this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.
Copy from re SearchGA
Print Form

# *EXHIBIT "3"*

Copy from re:SearchGA

BRIAN P. KEMP
GOVERNOR

TOM C. RAWLINGS
DIRECTOR

April 11, 2019

Gwenette Westbrooks



Re: Notice of demotion - Effective May 1, 2019

Dear Ms. Westbrooks:

Based upon your decision to maintain a work profile that includes only two Office of Family Independence (OFI) programs and because you have not registered for and completed the required training to work a third OFI program, you will be demoted to a lower position classification with a lower paygrade to reflect the two OFI programs that you currently work.

**Effective May 1, 2019, you will be demoted from an Economic Support Specialist 3 position, paygrade G, to an Economic Support Specialist 2 position, pay grade F, with the Georgia Department of Human Services, Division of Family and Children Services' OFI. Based on the special entry salary scale, your new salary will be $32,170.00.**

This is a full-time, non-exempt level position with consideration of the Fair Labor Standards Act (FLSA) position classification requirements. Because this is an unclassified position under the State Personnel Board Rules, this action may not be appealed.

**However, should you desire to maintain your current position as an Economic Support Specialist 3, paygrade G, you must register for the required training for a third OFI program no later than close of business April 19, 2019, by emailing your request to Jean Cheese (Jean.Cheese@dhs.ga.gov) and participating in the next scheduled training class. Additionally, you must receive the required average test score(s) (for each training component) to become eligible to work the third OFI program and begin working the third OFI program, ongoing. If you fail to meet any of these conditions outlined above, your demotion to Economic Support Specialist 2, with a decrease in pay, will take effect on May 1, 2019.**

If you have questions, you may contact your Human Resources Manager, Brenetia Adams-Robinson, at 404-206-5651.

Sincerely,

Durell Price

Durell Price
Deputy Field Operations Director

---

**BLUEPRINT FOR CHANGE ✚ A STATE OF HOPE ᠻ
SAFE CHILDREN.   STRENGTHENED FAMILIES.   STRONGER GEORGIA.**
COUNTY NAME DEPARTMENT OF FAMILY AND CHILDREN SERVICES
ADDRESS | CITY, GA  ZIPCODE

4

Copy from re:SearchGA

# *EXHIBIT "4"*

Copy from re:SearchGA

# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

QUINETTE (GWENETTE)          *
WESTBROOKS,                  *
                             *
    Plaintiff,             *
                             *
vs.                          *       Civil Action No.:
                             *       5:17-CV-365-TES
GEORGIA DEPARTMENT OF        *
HUMAN SERVICES,              *
                             *
    Defendant.             *

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Georgia

Department of Human Services (hereinafter "DHS"), Defendant in the above-

referenced action, by and through its counsel of record, the Attorney General of the

State of Georgia, and files this Motion for Summary Judgment and shows this

Court as follows:

As discussed in the Brief in Support of Defendant's Motion for Summary

Judgment, which is being filed contemporaneously with this Motion, Plaintiff fails

to raise a genuine issue of material fact, and Defendant is entitled to judgment as a

matter of law.  In support of its Motion, Defendant relies upon the following:

    (a)    Brief in Support of Defendant's Motion for Summary Judgment;

Copy from re:SearchGA

(b)   Defendant's Statements of Material Facts As To Which There Is No Genuine Issue To Be Tried;

(c)   Appendix in Support of Defendant's Motion for Summary Judgment with Appendix Exhibits 1-46, which are (d) through (h) herein, including exhibits to the depositions and affidavits;

(d)   The deposition of Plaintiff Quinette (Gwenette) Westbrooks;

(e)   The deposition of Stephen Perdue;

(f)   The deposition of Valerie Stewart;

(g)   The deposition of Shannon Field;

(h)   The affidavits of Stephen Perdue and Shannon Fields;

(i)   All pleadings of record; and

(j)   All evidence properly before the Court.

WHEREFORE, Defendant respectfully requests that the Court grant summary judgment to Defendant, dismiss Plaintiff's Complaint in its entirety and cast all costs upon her, and provide any other relief to Defendant it deems just and proper.

Respectfully submitted this 16th day of May, 2019.

CHRISTOPHER M. CARR          112505
Attorney General

ANNETTE M. COWART            191199
Deputy Attorney General

2

Copy from re:SearchGA

*s/ Bryan K. Webb*
_____

BRYAN K. WEBB                    743580
Senior Assistant Attorney General

*s/ Mary Catherine Greaber*

MARY CATHERINE GREABER     441858
Assistant Attorney General

Please address all
communications to:

MARY CATHERINE GREABER
Assistant Attorney General
40 Capital Square SW
Atlanta, Georgia 30334-1300
Telephone: (404) 656-5331
Fax: (404) 657-9932
Email: mgreaber@law.ga.gov

3

Copy from re:SearchGA

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 16, 2019, I electronically filed the foregoing

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of

Court using the CM/ECF system, which will automatically send e-mail notification

of such filing to the following attorney of record:

Wayne B. Kendall
wbkendall2@yahoo.com

s/*Mary Catherine Greaber*
Mary Catherine Greaber
Assistant Attorney General

Department of Law
40 Capitol Square, S.W.
Atlanta, Georgia 30334-1300
Telephone: (404) 656-5331
Facsimile: (404) 657-9932
Email:  mgreaber@law.ga.gov

4

Copy from re:SearchGA

# *EXHIBIT "5"*

Copy from re:SearchGA

# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF GEORGIA
# MACON DIVISON

QUINETTE (GWENETTE) WESTBROOKS )
)
    Plaintiff, )
)
v. )    Civil Action No.
)
GEORGIA DEPARMENT OF )    <u>5:17-CV-365-TES</u>
HUMAN SERVICES )
)
    Defendants. )
_____ )

## PLAINTIFF'S RESPONSE TO DEFENDANT
## GEORGIA DEPARTMENT OF HUMAN SERVICES'
## MOTION FOR SUMMARY JUDGMENT

**COMES NOW** Plaintiff pursuant to Fed.R.Civ.P. 56 and files this her

Response to Defendant Georgia Department of Human Services' Motion for

Summary Judgment.  Plaintiff states as follows:

##   I.    INTRODUCTION AND STATEMENT OF FACTS

  Plaintiff brings this lawsuit alleging that she has been discriminated against

on the basis of her race and disability in violation of Title VII of the Civil Rights

Act of 1964, 42 U.S.C. §2000e, *et seq.*, as amended (hereinafter referred to as

"Title VII") and the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

(hereinafter referred to as "ADA").  Specifically, Plaintiff claims that Defendant

failed to provide reasonable accommodations for her disabilities pursuant to the

Copy from re:SearchGA

ADA.  Plaintiff further claims that Defendant retaliated against her for filing this lawsuit and an Equal Employment Opportunity Commission (hereinafter referred to as "EEOC") intake questionnaire by reducing her pay.  Plaintiff further claims that Defendant repeatedly made improper medical inquiries of Plaintiff that are expressly prohibited by the ADA.  Defendant has filed a Motion for Summary Judgment asserting most prominently that Plaintiff's ADA claim is barred by Eleventh Amendment sovereign immunity.  Defendant's Motion for Summary Judgment should be denied because Defendant's asserted immunity is abrogated by Congress' enforcement powers under the Fourteenth Amendment and the state's legislative power.  In addition, there are several genuine issues of material fact that require that Plaintiff's claims survive summary judgment.

Pursuant to Fed.R.Civ.P. 10(c), Plaintiff adopts, as if fully set forth herein, the Plaintiff's Statement of Additional Material Facts for which There Exists a Genuine Issue to be Tried, which is being filed contemporaneously herewith.

## II.    ARGUMENT AND CITATION TO AUTHORITY

### A.    The Summary Judgment Legal Standard

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a genuine dispute of material fact exists to defeat a motion for summary judgment, the evidence is

Copy from re:SearchGA

viewed in the light most favorable to the party opposing summary judgment,

drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Welch v.*

*Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir.1992).  A fact is material if it is

relevant or necessary to the outcome of the suit. Id. at 248, 106 S.Ct. 2505.  A

factual dispute is genuine if the evidence would allow a reasonable jury to return a

verdict for the nonmoving party. Id.; *Firster v. Athens Heart Ctr., P.C.*, 305

F.Supp.3d 1368 (M.D. Ga., 2017).

### B.    Defendant Does Not Have Eleventh Amendment Sovereign Immunity to Claims Filed Pursuant to the ADA

The Supreme Court outlines the two-prong test for abrogating states'

Eleventh Amendment immunity.  "[F]irst, [the Court inquires] whether Congress

unequivocally expressed its intent to abrogate that immunity; and second, if it did,

[the Court inquires] whether Congress acted pursuant to a valid grant of

constitutional authority." *Tennessee v. Lane*, 541 U.S. 509, 124 S.Ct. 1978, 158

L.Ed.2d 820 (2004);  *McCauley v. Georgia*, No. 11-11817 (11th Cir. 2012);  *see*

*also Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976).

First, in § 12202 of the ADA, Congress made clear its intent to abrogate

states' immunity from suits brought under the ADA.  *Lane,* 541 U.S. at 518, 124

S.Ct. at 1985.  The ADA specifically provides that "[a] State shall not be immune

under the Eleventh Amendment to the Constitution of the United States from an

3

Copy from re:SearchGA

action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. §12202.

Second, Congress has the authority both to remedy and to deter violations of rights guaranteed by the Fourteenth Amendment by prohibiting unlawful and discriminatory conduct, including that which is not itself forbidden by the Amendment's text. The Fourteenth Amendment provides, in relevant part, that no state may "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1.

The purpose and structure of the ADA indicate that its primary goal is to eradicate the effects of intentional discrimination. The ADA states that "individuals with disabilities are a discrete and insular minority who have been faced with restrictions and limitations, subjected to a history of purposeful unequal treatment, and relegated to a position of political powerlessness in our society, based on characteristics that are beyond the control of such individuals and resulting from stereotypic assumptions not truly indicative of the individual ability of such individuals to participate in, and contribute to, society." 42 U.S.C. §12101(a)(7). By invoking "the sweep of congressional authority, including the power to enforce the Fourteenth Amendment," the ADA is designed "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." §§ 12101(b)(1), (b)(4).

4

Copy from re:SearchGA

In *Fitzpatrick*, the Supreme Court held that Congress can abrogate a State's sovereign immunity to claims brought under the ADA when it does so pursuant to a valid exercise of its power under Section 5 of the Fourteenth Amendment to enforce the substantive guarantees of that Amendment.  427 U.S. at 456; *see also Seaborn v. State of Fla., Dept. of Corrections*, 143 F.3d 1405 (11th Cir. 1998).  "Section 5 of the Fourteenth Amendment gives Congress broad power indeed to enforce the command of the Amendment and 'to secure to all persons the enjoyment of perfect equality of civil rights and the equal protection of the laws against State denial or invasion. . ." *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 732, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982) (*citing Ex parte Virginia*, 100 U.S. 339, 346, 25 L.Ed. 676 (1880).

Defendant relies heavily on the Eleventh Circuit's ruling in *Carr v. City of Florence*, 916 F.2d 1521(11th Cir. 1990), stating that the Eleventh Amendment provides absolute protection to states sued in Federal court without their consent.  However, Defendant fails to address a very critical part of the Eleventh Circuit's holding.  In *Carr*, the Eleventh Circuit recognized two exceptions to Eleventh Amendment sovereign immunity.  The first we have already discussed: Congress's ability to abrogate Eleventh Amendment immunity when it acts pursuant to the enforcement provisions of Section 5 of the Fourteenth Amendment.  The second is a state's power to waive its Eleventh Amendment immunity expressly through

5

Copy from re:SearchGA

legislative enactment.  *Carr*, 916 F.2d at 1524.[1]  Consideration of this second

exception requires that we turn to Georgia law for guidance.

The Georgia Constitution provides: "[t]he sovereign immunity of the state

and its departments and agencies can only be waived by an Act of the General

Assembly which specifically provides that sovereign immunity is thereby waived

and the extent of such waiver."  Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e).

"Where a state legislative act creates a right of action against the state which can

result in a money judgment against the state treasury, and the state otherwise

would have enjoyed sovereign immunity from the cause of action, the legislative

act must be considered a waiver of the state's sovereign immunity to the extent of

the right of action—or the legislative act would have no meaning."  *Willliamson v.*

*Department of Human Resources*, 572 S.E.2d 678, 258 Ga. App. 113 (Ga. App.

2002).[2]

In *Williamson*, the Fair Employment Practices Act (hereinafter referred to as

"FEPA") "creates the right of action against the state of Georgia, as an employer,

for discrimination on the basis, inter alia, of an employee's disability." O.C.G.A.

§§ 45-19-21(a)(3); 45-19-36(b).  A FEPA action can result in a judgment for back

---

[1]     *Kentucky v. Graham*, 473 U.S. 159, 160, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (absent waiver by a State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court).

[2]     *See Chatman v. Findley*, 274 Ga. 54, 55, 548 S.E.2d 5 (2001) (because the General Assembly is presumed to intend something by the passage of an act, the courts must construe the provisions of an act so as not to render the act meaningless).

6

Copy from re:SearchGA

pay and other actual damages, including litigation expenses.  O.C.G.A. § 45-19-38(b), (d).  "Thus, the state by legislative act specifically waived its sovereign immunity to the extent of the action authorized by the FEPA."  *Williamson*, 572 S.E.2d at 681.

"Because in the FEPA, the state by legislative act waived its sovereign immunity as to state disability discrimination claims by its employees, the state may not selectively cloak itself in sovereign immunity as to federal disability discrimination claims by its employees."  *Williamson*, 572 S.E.2d at 681.[3]  To do so would discriminate against federally based rights which the Supremacy Clause of the Constitution of the United States forbids states to do.  U.S. Const., Art. VI, Cl. 2.  *Id.*[4]

## C.    Plaintiff Has Stated A Prima Facie Case of Discrimination Pursuant to the ADA

The ADA provides that no covered employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and

---

[3]    *See Howlett v. Rose*, 496 U.S. 356, 375, 378, 380-381, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990) (state subdivision was not entitled to sovereign immunity as to claim based on 42 U.S.C. § 1983 where state had waived sovereign immunity as to state law claims against the same state actors based on the same conduct).

[4]    *Howlett v. Rose*, 496 U.S. at 380-381, 110 S.Ct. 2430; *McKnett v. St. Louis Co.*, 292 U.S. 230, 234, 54 S.Ct. 690, 78 L.Ed. 1227 (1934) ("A state may not discriminate against rights arising under federal laws.")

7

Copy from re:SearchGA

privileges of employment."  42 U.S.C. § 12112(a) (2019).[5]  Under the controlling

law in the Eleventh Circuit, "[t]he burden-shifting analysis of Title VII employment

discrimination claims is applicable to ADA claims." *Earl v. Mervyns Inc.,* 207 F.3d

1361, 1365 (11th Cir. 2000); *Holly v. Clairson Indus.,* L.L.C., 492 F.3d 1247 (11th

Cir. 2007).  Therefore, we consider both Plaintiff's ADA and Title VII claims using

this framework, beginning with her ADA discrimination claim.

The Eleventh Circuit "evaluates disability-discrimination claims brought

under the ADA under the [burden-shifting] framework, under which, the plaintiff

must first establish a prima facie case of discrimination." *Gilliard v. Ga. Dep't of*

*Corr.* (11th Cir. 2012); *Cleveland v. Home Shopping Network, Inc.,* 369 F.3d 1189,

1193 (11th Cir. 2004); *Holly,* 492 F.3d at 1255.  To establish a prima facie case of

employment discrimination under the ADA, a plaintiff must show that: (1) she has

a disability; (2) she is a qualified individual with or without a reasonable

accommodation; and (3) she was discriminated against because of her disability.  *Id;*

*Holly,* 492 F.3d at 1255-56; *Pritchard v. Southern Co. Services,* 92 F.3d 1130, 1132

(11th Cir. 1996); *See* 42 U.S.C. §12132.

Under the ADA, "disability" is defined as:

> (a)  a physical or mental impairment that substantially limits one or
> more of the major life activities of such individual;

---

[5]  Congress enacted major changes to the ADA by adoption of the Americans with Disabilities Act
Amendments Act of 2008 (hereinafter referred to as "ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553
(2008), effective Jan. 1, 2009.

Copy from re:SearchGA

(b)    a record of such impairment; or

(c)    being regarded as having such an impairment.
42 U.S.C. §12102 (2).

First, Plaintiff maintains that she is disabled under the ADA because she suffers from several physical impairments, i.e., bursitis, carpal tunnel syndrome, osteoarthritis and tendonitis. Two of these physical impairments required surgical intervention. Plaintiff's bursitis, osteoarthritis and tendonitis limit her ability to perform major life functions specifically her ability to walk, stand, sit, sleep and bathe. Plaintiff also maintains that she is disabled because her employer regarded her as suffering from such an impairment. Defendant knew that Plaintiff suffered from an impairment because Plaintiff walked with the assistance of a walking cane and had a handicap decal on her car. Defendant also knew that Plaintiff suffered from an impairment because it repeatedly made improper medical inquiries of Plaintiff.

As to the second element, the ADA defines a "qualified individual" as an individual with a disability "who, with or without reasonable accommodation, can perform the essential functions of" her job. 42 U.S.C. § 12111(8). With and without a reasonable accommodation, Plaintiff was able to perform the essential functions of her job. Plaintiff's Annual Performance Review dated July 1, 2015 through June 30, 2016 stated that she "met expectations for this performance period." (See Pl. Ex. 11).

Copy from re:SearchGA

Third, under the plain language of the ADA, an employer's failure to reasonably accommodate an "otherwise qualified" disabled employee itself constitutes unlawful discrimination. *Holly*, 492 F.3d at 1249; *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1225-26 (11th Cir. 2005); *Morris-Huse v.* Geico, No. 18-10660 (11th Cir. 2018); 42 U.S.C. § 12112(b)(5)(A). An accommodation is "reasonable," and therefore required under the statute, "only if it enables the employee to perform the essential functions of the job."[6] *Holly*, 492 F.3d at 1256; *Anderson v. Embarq*, No. 09-13666 (11th Cir. 2010). Plaintiff contends that she was denied various reasonable accommodations that modified or adjusted her work environment, including (1) an individual desk printer; and, (2) an office with a thermostat to enable her to adjust the temperature of her work environment, both reasonable requests that the covered employer could reasonably have accommodated without undue hardship.

### D.    Plaintiff Has Produced Evidence Sufficient to Establish Genuine Issues of Material Fact of Disparate Treatment Discrimination Pursuant to Title VII

As a prerequisite to bringing suit under Title VII, a charge must be filed with the EEOC within 180 days of the date of the act giving rise to the charge. *See* 42

---

[6]    *See also* 29 C.F.R. § 1630.2(o)(1)(ii) ("The term reasonable accommodation means: ... Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, *that enable a qualified individual with a disability to perform the essential functions of that position* . . . ." (emphasis added)).

10

Copy from re:SearchGA

U.S.C.A. § 2000e-5(e); *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859 (11th Cir. 1986). Defendant erroneously argues that Plaintiff's Title VII claim must be dismissed because Plaintiff failed to file a timely EEOC charge. Plaintiff's EEOC charge was timely filed on April 18, 2017 because the date of the act giving rise to the charge was "[s]ince about 2016, and continuing…"

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin…" 42 U.S.C. § 2000e-2(a)(1). When a plaintiff relies on circumstantial evidence to prove discrimination under Title VII, the court employs a burden-shifting analysis, under which the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Crawford v. Carroll*, 529 F.3d 961, 975-76 (11th Cir. 2008); *see Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181-82 (11th Cir. 2010).

To establish a prima facie case under Title VII, and thus raise an inference of discriminatory intent, the plaintiff must show: (1) she is a member of a protected class; (2) she was qualified for the job in question; (3) she was subjected to an adverse employment action; and, (4) her employer treated similarly situated employees outside her class more favorably. *See Maynard v. Bd. of Regents of Div.*

11

Copy from re:SearchGA

*of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003); *see Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 769 (11th Cir. 2005).

Once the plaintiff has made out the elements of the prima facie case, the burden shifts to the employer to articulate a non-discriminatory basis for its employment action. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the employer meets this burden, the inference of discrimination drops out of the case entirely, and the plaintiff has the opportunity to show by a preponderance of the evidence that the proffered reasons were pretextual. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Where the plaintiff succeeds in discrediting the employer's proffered reasons, the trier of fact may conclude that the employer intentionally discriminated. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Vessels v. Atlanta Independent School System*, 408 F.3d 763 (11th Cir. 2005).

There is no dispute that, with respect to her disparate treatment claims, Plaintiff belongs to a protected class because she is African-American. (Defendant's Statement of Undisputed Material Facts at ¶1). It is also undisputed that Plaintiff was qualified to perform the job tasks associated with the position of

Copy from re:SearchGA

Economic Support Specialist 3, a job she had held since at least July 1, 2015.  (Pl. Ex. 11).[7]

The Defendant's refusal to allow the Plaintiff to have an individual desk printer while affording a similarly situated white employee with the same disability an individual desk printer, and other workplace accommodations, is a discriminatory adverse employment action.  (Westbrooks Depo. pp.  143:2 – 151:16).[8]   Consequently, the Plaintiff asserts that the refusal of Defendant to accommodate her by allowing her to maintain an individual desk printer and the refusal of Defendant to accommodate Plaintiff by granting her access to an office with a thermostat to enable her to adjust the temperature when considered in comparison to Defendant's treatment of a Caucasian comparator, Bessie Stewart, is discriminatory.  (Westbrooks Depo. pp.  143:2 – 151:16).

Plaintiff's recent involuntary demotion from Economic Support Specialist 3 to Economic Support Specialist 2 and the resulting pay reduction is also an adverse employment action that took effect on May 1, 2019.  (See Pl. Ex. 4).  Similarly situated coworkers who were offered a voluntary demotion from Economic Support Specialist 3 to the position of Economic Support Specialist 1 without a

---

[7]      Plaintiff's performance evaluation during the relevant time period, June July 1, 2015 - June 30, 2016, rated her as a "Successful Performer" and found that "Mrs. Westbrooks met expectations for this performance period."  See Pl. Ex. 11, p. 3.

[8]      Building procurement officer, Valerie Stewart, admitted that Plaintiff requested an individual desk printer.  (Stewart Depo. p. 41:13 -16).

13

Copy from re:SearchGA

change in pay were treated more favorably than Plaintiff.  (See Pl. Ex. 1).  These similarly situated coworkers are Angela Pryor, who is African-American; Bonita Okorley, who is African-American; Luvenia Thorpe, who is African-American; Angela Childs, who is African-American; Diane Walker, who is African-American; and Elizabeth McKinney, who is Asian-American.  (Pl. Decl. ¶ 33). While the Defendant's treatment of these similarly situated employees does not indicate racial discrimination because they too belong to a protected class, it nevertheless indicates individual intentional discrimination against the Plaintiff, as these other employees had not engaged in protected activity.  Therefore, the Court may make the reasonable inference that Defendant intentionally discriminated against Plaintiff, in a manner constituting an adverse employment action, demotion and loss of pay, because the only difference between her and the other coworkers was that she engaged in protected activity.

In December of 2016, one of the coldest months of the year, Plaintiff was moved to the first floor records room where there was no heat.  Plaintiff made complaints regarding the heat, and it was not fixed.   Several times a day, Plaintiff had to walk from the first floor to the second floor network printer to obtain her work assignments.  In addition, the adjacent handicap accessible door remained broken requiring Plaintiff to walk a great distance to and from her vehicle.  This continued for five (5) months.

Copy from re:SearchGA

Sometime after May of 2017, Bessie Stewart, a Caucasian comparator who also had problems walking, was moved from the third floor into the first floor records room where Plaintiff was located for five (5) months. At the time Bessie Stewart was placed in the record room, the inoperable heating system did not cause the room to be cold because it was summertime. The network printer was connected to an active fax line and moved directly next to her desk. She was also given an individual desk printer so she did not have to walk. She was also located next to the *repaired* handicap accessible door which led directly to the handicap parking space where she parked her vehicle.

Defendant asserts that Bessie Stewart was permitted to have an individual desk printer and was treated preferably because she fell into the employee category including administrators, supervisors, managers, and those employees that handle employee personnel and business services matters. Plaintiff argues that this reason is a pretext for unlawful discrimination pursuant to Title VII.

### E. Plaintiff Has Produced Evidence Constituting Genuine Issues of Material Fact to Sustain Her Claim of Retaliation Under the ADA and Title VIII

Title VII and the ADA prohibit retaliation against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII and the ADA], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [thereunder]." 42 U.S.C. §

Copy from re:SearchGA

2000e-3(a). To establish a prima facie case of retaliation under the burden-shifting framework, and to raise an inference of discriminatory intent, the plaintiff must show that: (1) she engaged in statutorily protected conduct; (2) she experienced a materially adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *Gilliard v. Ga. Dep't of Corr.* (11th Cir. 2012); *see also Stewart v. Happy Herman's Chesire Bridge, Inc.,* 117 F.3d 1278 (11th Cir. 1997); *Hurlbert v. St. Mary's Health Care Sys., Inc*., 439 F.3d 1286, 1297 (11th Cir. 2006).

First, Plaintiff engaged in statutorily protected conduct by filing an EEOC Charge of Discrimination on April 18, 2017 accompanied by a letter to the EEOC of the same date. (Def. Ex. 46 and 47 [ECF Doc. Nos. 29-46 and 29-47]). Plaintiff filed this lawsuit on September 25, 2017. Plaintiff then filed an EEOC Intake Questionnaire on February 27, 2019 stating that Defendant threatened to demote her and reduce her pay in retaliation for her filing of this lawsuit. (See Pl. Ex. 3). Second, less than one month and a half later, on April 11, 2019, Plaintiff received a Notice of Demotion indicating that she would be involuntary demoted from Economic Support Specialist 3 (ESS3) to Economic Support Specialist 2 (ESS2). (See Pl. Ex. 4). The resulting pay reduction took effect on May 1, 2019. (See Pl. Exs. 4 and 19; Pl. Second Declaration ¶ 2).

16

Copy from re:SearchGA

The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).[9] The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be "very close." *Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001). A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough. *See Clark,* 532 U.S. at 273.[10] It logically follows that a period of less than one month and a half meets the burden of causation by showing close temporal proximity.

A plaintiff can also establish a causal connection by proving that the protected activity and the negative employment action are not completely unrelated. *See Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994). In this case, the very same adverse employment action that Plaintiff characterized as a threat in her EEOC Intake Questionnaire dated February 27, 2019 came into fruition when Plaintiff received a Notice of Demotion on April 11, 2019. Therefore, Plaintiff has

---

[9]     *Clark Cnty. Sch. Dist. V. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 1511 (2001); *Brungart v. BellSouth Telecomm., Inc.,* 231 F.3d 791, 798-99 (11th Cir.2000); *Gilliard v. Ga. Dep't of Corr.* (11th Cir. 2012).

[10]     *Richmond v. ONEOK,* 120 F.3d 205, 209 (10th Cir. 1997) (3 month period insufficient); *Hughes v. Derwinski,* 967 F.2d 1168, 1174-75 (7th Cir. 1992) (4 month period insufficient).

17

Copy from re:SearchGA

established both close temporal proximity and a strong causal connection between the protected activity and the adverse employment action.

Once a plaintiff has established a prima facie case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). If the employer proffers such an explanation, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the defendant's explanation is merely a pretext. *Id.*

Defendant's non-retaliatory basis for Plaintiff's demotion and pay reduction is belied by the fact it has allowed other similarly situated employees to continue with the same pay without taking on extra duties. (Pl. Ex. 1 and 4; Pl. Decl. ¶¶ 32, 33, 34, and 37). Therefore, the Court may conclude that Defendant intentionally retaliated against Plaintiff pursuant to the ADA and Title VII.

### F. Defendant Made Improper and Prohibited Medical Inquiries of the Plaintiff's Disabilities

The Defendant has admitted to making demands upon the Plaintiff that she produce her medical records and the specific type of accommodation needed, in order to prove her disability. Defendant's Statement of Undisputed Material Facts at ¶¶ 4, 5, 6, and 7 [ECF Doc. No. 29-2]; Aff. of Stephen Perdue ¶¶ 16 and 17, Exs. "A" and "B" [ECF Doc No. 29-5]. In fact, the Defendant has adopted a formal policy that *"in order for an employee to be given an accommodation related to a*

18

Copy from re:SearchGA

*medical condition, the employee must provide a doctor's statement that not only states the medical condition but also what accommodations are needed"*.  Aff. of Stephen Perdue ¶ 17, Ex. "B" [ECF Doc No. 29-5].  Nevertheless, according to the Plaintiff, Mr. Perdue told her that *"if an employee asks for an accommodation, that they're supposed to try their best to accommodate that person, even without a doctor's statement … because it's not related to my work."* (Westbrooks Depo. 130:17 – 131:7 [ECF Doc. No. 29-20]).

On June 7, 2016, Defendant's employee, Ina Hines, sent an email to the Plaintiff, stating: *"Can you send me a copy of the physician note which outline the accomodation* (sic) *so we can get this resolved quickly? The return to work note I received when you returned did not have that Information. Please provide."* A short while later she sent another email stating: *"The documentation is needed to justify the accomodation* (sic). *Just stating that cold air aggravate your condition is not enough to justify the accomodation* (sic) *you are requesting; as most of the offices have cold air. See if your physician will provide you a note that give more detail of the needed accomodation* (sic)*."* (Westbrooks Depo. Ex. 14 [ECF Doc. No. 29-34]).

These requests and demands of the Defendant to the Plaintiff are unlawful and specifically prohibited under the ADA.  The ADA provides:

> *"A covered entity … shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to*

19

Copy from re:SearchGA

> *the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity."* 42 U.S.C. § 12112(d)(4)(A).

Although administrative interpretations of an Act by its enforcing agency are not controlling, they "do constitute a body of experience and informed judgment to which [the court] . . . may properly resort for guidance." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2403, 91 L.Ed.2d 49 (1986).  In this regard the EEOC Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act (EEOC Notice 915.002) (EEOC, July 27, 2000), is instructive.  *Harrison v. Benchmark Electronics Huntsville, Inc.*, 593 F.3d 1206 (11th Cir., 2010).   It instructs that "[a] 'disability-related inquiry' is a question that is likely to elicit information about a disability." Enforcement Guidance on Disability–Related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act (ADA), 2000 WL 33407183, *1 (EEOC, July 26, 2000). At least one circuit has found that requiring an employee to provide a doctor's note with a general medical diagnosis is a disability-related inquiry. *Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 93 (2d Cir. 2003) (applying a liberal "may tend to reveal a disability" standard); and see, *Firster v. Athens Heart Ctr., P.C.*, 305 F.Supp.3d 1368 (M.D. Ga., 2017).

Copy from re:SearchGA

The regulations adopted by the EEOC on the subject are also deserving of consultation. These regulations provide: *[e]xcept as permitted by § 1630.14, it is unlawful for a covered entity to require a medical examination of an employee or to make inquiries as to whether an employee is an individual with a disability or as to the nature or severity of such disability."*[11] 29 CFR 1630.13(b). The relevant part of 29 CFR § 1630.14, at subsection (c), provides:

> *"A covered entity may require a medical examination (and/or inquiry) of an employee that is job-related and consistent with business necessity. A covered entity may make inquiries into the ability of an employee to perform job-related functions."*

The inquiries demanded of the Plaintiff, however, were not designed to determine her ability to perform job-related functions but instead, as Ina Hines wrote – *"[t]he documentation is needed to justify the accomodation* (sic)".[12] Medical inquiries for the purpose of justifying an accommodation for a qualified employee are prohibited where the employee is otherwise qualified to perform her job-related functions. It is undisputed that Gwenette Westbrooks was otherwise qualified to perform her job-related duties as her performance evaluation during the relevant time period, June July 1, 2015 - June 30, 2016, rated her as a

---

[11]     The EEOC's regulations are entitled to substantial judicial deference. See *Albra v. Advan, Inc.,* 490 F.3d 826, 833 n. 6 (11th Cir. 2007).

[12]     Email from Ina Hines to Gwenette D. Westbrooks dated June 7, 2016. (Westbrooks Depo. Ex. 14 [ECF Doc. No. 29-34]).

21

Copy from re:SearchGA

"Successful Performer" and found that "Mrs. Westbrooks met expectations for this performance period."  See Pl. Ex. 11, p. 3.

An employee may raise a § 12112(d)(4)(A) claim whether or not she is disabled. *Owusu Ansah v. Coca Cola Co.*, 715 F.3d 1306, 1310 (11th Cir.), cert. denied, 134 S. Ct. 655 (2013).  Also, the 11th Circuit has recognized that an employee has a separate and distinct claim under the ADA for an improper medical inquiry.  *Harrison v. Benchmark Electronics Huntsville, Inc.*, 593 F.3d 1206 (11th Cir., 2010).

## III.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion for Summary Judgment.

This June 27, 2019.

Respectfully submitted,

**WAYNE B. KENDALL, P.C**.

s/ Wayne B. Kendall
Georgia Bar No.: 414076
155 Bradford Square, Suite B
Fayetteville, GA 30215
Telephone: (770) 778-8810
Email: wbkendall2@yahoo.com

Copy from re:SearchGA

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day served a copy of the foregoing

Plaintiff's Response to Defendant Georgia Department of Human Services'

Motion for Summary Judgment with the Clerk of Court using the CM/ECF

system which will automatically send a service copy via email to opposing

counsel(s) listed below.

> Ms. Mary Catherine Greaber/mgreaber@law.ga.gov
> Assistant Attorney General
> Georgia Office of the Attorney General
> 40 Capitol Square S.W.
> Atlanta, Georgia 30334-1300

This June 27, 2019.

Respectfully submitted
**WAYNE B. KENDALL, P.C.**

/s/ Wayne B. Kendall
Wayne B. Kendall
Georgia Bar No. 414076
*Attorney for Plaintiff*

155 Bradford Square
Suite B
Fayetteville, GA  30215
(770) 778-8810
(770) 716-2439 (Fax)
wbkendall2@yahoo.com

Copy from re:SearchGA

*EXHIBIT "6"*

Copy from re:SearchGA

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | |

and EEOC

_State or local Agency, if any_

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Quinette (Gwenette) Westbrooks | (478) 390-7759 | |

| Street Address | City, State and ZIP Code |
|---|---|

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| Georgia Department of Human Services ("DHS") | 15+ | (404) 656-5680 |

| Street Address | City, State and ZIP Code |
|---|---|
| 2 Peachtree Street | Atlanta, GA 30303 |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN

☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION

☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE

| Earliest | Latest |
|---|---|
| 06-12-2015 | 05-01-2019 |

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

### Requests for Accommodation: June 2015-July 2016

Beginning in June of 2015, Plaintiff began asking for a reasonable accommodation due to her medical conditions, i.e. bursitis, carpal tunnel syndrome, osteoarthritis and tendonitis, which limit her ambulatory mobility. Starting on June 12, 2015, Plaintiff sent emails to Shannon Fields, Bibb County Department of Family and Children Services (hereinafter referred to as "Bibb County DFCS") complaining about the negative effect of the building's cold air temperature on her medical condition. DHS responded to Plaintiff's request for an accommodation by making improper medical inquiries. In September of 2015, at the request of DHS, Plaintiff provided her supervisor, Vonretta Bivins, and Nancy Weaver, who handles workers compensation issues and work place accommodations at Bibb County DFCS, a letter from her doctor, Dr. John Sapp of OrthoGeorgia, dated September 15, 2015, stating that cold air aggravates her diagnosis of tendonitis. On May 24, 2016, Plaintiff sent Ms. Fields a renewed email about the cold air aggravating her medical condition and asked for an accommodation. In addition, the adjacent handicap accessible door remained broken requiring Plaintiff to walk a great distance to and from her vehicle. Plaintiff began physical therapy on approximately

Copy from re:SearchGA

June 1, 2016 for six (6) consecutive weeks. Ms. Fields could have arranged for Plaintiff to use a vacant office, but she did not. On June 7, 2016, DHS's employee, Ina Hines, sent an email to the Plaintiff, stating: "Can you send me a copy of the physician note which outline the accommodation (sic) so we can get this resolved quickly? The return to work note I received when you returned did not have that Information. Please provide." A short while later, Ida Hines sent another email stating: "The documentation is needed to justify the accommodation (sic). Just stating that cold air aggravate your condition is not enough to justify the accommodation (sic) you are requesting; as most of the offices have cold air. See if your physician will provide you a note that give more detail of the needed accommodation (sic)." At the request of DHS, on June 9, 2016, Plaintiff provided additional medical documentation from a different doctor, Dr. Ryan DeCoons, at Piedmont Orthopedic, dated July 12, 2016, stating that Plaintiff could return to work with the restriction that she remain out of colder work environments. On July 1, 2016, DHS finally accommodated Plaintiff with an office from which she could control the temperature of her work space more than a year after her first request for an accommodation.

## Requests for Accommodation: August 2016-January 2017

During the time that Plaintiff waited for an accommodation, her condition declined because her disabilities were aggravated by the building's cold air temperature and DHS's failure to accommodate her with an individual desk printer. In August of 2016, Plaintiff requested an ink cartridge for her individual desk printer, and Valerie Stewart, Procurement Officer for the Bibb County DFCS, came to her office and took her individual desk printer. Plaintiff asked for the printer back because at the time she could not walk without assistance, but the printer was not returned. In August of 2016, Plaintiff had an injection in her knee to treat the pain resulting from the cold temperatures at work. In December of 2016, one of the coldest months of the year, when the second floor was being renovated, Plaintiff was moved to the first floor records room where there was no heat. Plaintiff made complaints regarding the heat, and it was not fixed. Several times a day, Plaintiff was made to walk from the first floor to the second floor to obtain her faxed work assignments from a network printer. Plaintiff was also made to walk to the network printer on the first floor to retrieve her printed work. This continued for five (5) months.

Copy from re:SearchGA

During Plaintiff's five (5) month stay in the record room with no heat, Plaintiff sent several renewed emails about the cold air aggravating her medical conditions and asked for an accommodation. Ms. Fields could have arranged for Plaintiff to use a vacant office, but she did not. On December 28, 2016, Plaintiff was in pain so paralyzing that she had to leave work and go to the emergency room. On January 4, 2017, Plaintiff had a doctor's appointment. At this appointment, an MRI was scheduled, surgery on Plaintiff's knee was recommended, and Plaintiff began a course of injections for five (5) weeks. The doctor also removed fluid from Plaintiff's knee for six (6) weeks.

### Similarly-situated comparator with ambulatory mobility challenges receives preferential treatment

After Plaintiff was accommodated with an office, Plaintiff observed DHS give preferential treatment to a similarly situated White employee who also had problems with her ambulatory mobility. After Plaintiff was moved back to her old office in May of 2017, Bessie Stewart, a Caucasian coworker who also had problems walking, was moved from the third floor into the first floor records room where Plaintiff was located for five (5) months. At the time Bessie Stewart was placed in the record room, the inoperable heating system did not cause the room to be cold because it was during the summer months. The network printer was connected to an active fax line and moved directly next to Bessie Stewart's desk. Bessie Stewart was also given an individual desk printer, so that she would not have to walk far in order to process her work. Bessie Stewart was also located next to the now repaired handicap accessible door which led directly to the two portable handicap parking space markers where she parked her vehicle. DHS also added the two portable handicap parking space markers specifically to accommodate Bessie Stewart.

### Requests for Accommodation: After the First EEOC Action

On February 21, 2017, Plaintiff filed her first EEOC Intake Questionnaire. On April 18, 2017, Plaintiff filed her first Charge of Discrimination. In May of 2017, Plaintiff was moved from the first floor records room without heat to her former office on the second floor. There were two vacant offices in Plaintiff's unit on the second floor. Plaintiff asked Ms. Fields if she could be moved to an office adjacent to her unit so she would not have to walk a great distance, and Ms. Fields declined the request, informing Plaintiff there were no vacant offices near her unit. Ms. Fields advised Plaintiff that she would be going back to the office that she originally

Copy from re:SearchGA

selected before renovations. On September 25, 2017, Plaintiff filed her Complaint for Employment

Discrimination. In December of 2017, Plaintiff was on leave for two weeks for a procedure on her knee. When

Plaintiff returned from leave, her supervisor, Marion Dudley, called Valerie Stewart and asked if Plaintiff

could have an individual desk printer because she was recovering from knee surgery. Valerie Stewart said

"No." Plaintiff was in physical therapy from December of 2017 until around April of 2018.

### Changes in Plaintiff's job classification

DHS is comprised of three divisions: (1) Aging Services, (2) Child Support Services, and (3) Family

and Children Services. Bibb County DFCS falls under the third division. Plaintiff was hired to work for Bibb

County DFCS on February 1, 2006. Plaintiff's initial job title was Childcare Case Manager with the Child and

Parent Services (hereinafter "CAPS") department. Plaintiff's current job title is Economic Support Specialist 2

with the Office of Family Independence (hereinafter "OFI"). Plaintiff was recently demoted with a loss in pay.

In July of 2016, Terry Greene, asked Plaintiff to turn all of her OFI work over to her supervisor, Loretta

Bivens. In July of 2016, both Terry Greene and Stephen Perdue, asked Plaintiff to return to CAPS because the

department needed assistance. In March of 2017, all Bibb County Department of Family and Children

Services employees got a raise for the first time in twelve (12) years. Although Plaintiff was working in the

CAPS department, Plaintiff was reclassified from an OFI Economic Support Specialist 2 to an OFI Economic

Support Specialist 3, effective sometime before July of 2015. At the time, Plaintiff was not required to work

any additional programs. In March of 2018, the entire CAPS department was eliminated and replaced with the

Department of Early Childhood and Learning ("DECAL"). In March of 2018, Stephen Perdue told Plaintiff

that because she got a raise in March of 2017 and a promotion to OFI Economic Specialist 3, she would have

to train for a third program. On April 5, 2018, an email was sent to several of Plaintiff's CAPS department

coworkers advising them that they were permitted to take a voluntary demotion with no reduction in pay and

without taking on any additional programs. Plaintiff did not receive this email. While Plaintiff's co-workers

were allowed to only work one program, Medicaid, and keep their same pay, Plaintiff was required to work

three programs: (1) Medicaid, (2) Food Stamps, and (3) Adult Medicaid or TANF or risk adverse

consequences including a pay reduction up to termination.

Copy from re:SearchGA

**Plaintiff's demotion and reduction in pay: After the Second EEOC Action**

On April 2, 2018, Plaintiff received an email from Teresa B. Johnson, HR Generalist, South Region,

indicating that because Plaintiff was already an OFI Economic Support Specialist 3, she would have no

reduction in pay. On April 11, 2019, as retaliation for filing the Second EEOC Intake Questionnaire on

February 27, 2019, Plaintiff received a Notice of Demotion from Durell Price, Deputy Field Operations

Director. Plaintiff's decrease in pay became effective May 1, 2019. Plaintiff's salary before May 1, 2019 was

approximately thirty-four thousand dollars ($34,000.00). Plaintiff's current salary reflecting this demotion is

thirty-two thousand one hundred seventy dollars ($32,170.00).

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| _____  _____ <br> *Date*            *Charging Party Signature* | |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION <br> This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To: <br> ☐ FEPA <br> ☒ EEOC | Agency(ies) Charge No(s): |
|---|---|---|
| | | and EEOC |
| *State or local Agency, if any* | | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet*

Copy from re:SearchGA

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY -- *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 7/23/19       *Quinette Gwenette Westbroo*<br>Date            Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

Copy from re:SearchGA

# *EXHIBIT "7"*

Copy from re:SearchGA

EEOC Form 161-B (11/16)          **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: Quinette (Gwenette) Westbrooks | From: Atlanta District Office |
|---|---|
| ███ ██ | 100 Alabama Street, S.W. |
| | Suite 4R30 |
| | Atlanta, GA 30303 |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | Deidra A. Stephens, | |
| 410-2019-03423 | Investigator Support Asst | (404) 562-6868 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

**Darrell E. Graham,**
**District Director**

**SEP 0 3 2019**

*(Date Mailed)*

cc:   **Ann Burris**
     **Assistant Deputy Commissioner**
     **GEORGIA DEPARTMENT OF HUMAN SERVICES**
     **Two Peachtree Street, N.W.**
     **Suite 28460**
     **Atlanta, GA 30303**

     **Wayne B. Kendall, P.C.**
     **155 Bradford Square**
     **Suite B**
     **Fayetteville, GA 30215**

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Copy from re:SearchGA

*EXHIBIT "8"*

Copy from re:SearchGA

# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
### MACON DIVISON

| | | |
|---|---|---|
| QUINETTE (GWENETTE) WESTBROOKS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| GEORGIA DEPARMENT OF | ) | _____ |
| HUMAN SERVICES | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff QUINETTE (QWENETTE) WESTBROOKS

(hereinafter "Plaintiff"), by and through undersigned counsel, and hereby files this

Complaint for Damages against GEORGIA DEPARTMENT OF HUMAN

SERVICES (hereinafter "DHS") on the following grounds: (1) race discrimination

and retaliation in violation of Title VII of the Civil Rights Act of 1964, as codified,

42 U.S.C. §§ 2000e to 2000e-17 (hereinafter referred to as "Title VII"); and, (2)

disability discrimination and retaliation in violation of Title I of the Americans

with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12111-12117 (hereinafter

referred to as "the ADA").

Copy from re:SearchGA

## NATURE OF THE CASE

Plaintiff Quinette (Gwenette) Westbrooks is an African-American woman who identifies as disabled due to several existing medical conditions, i.e. bursitis, carpal tunnel syndrome, osteoarthritis and tendonitis.  Plaintiff's medical conditions severely limit her ambulatory mobility but do not affect her essential job duties.

Defendant Georgia Department of Human Services is a state agency that delivers a wide range of human services designed to promote self-sufficiency, safety and well-being for all Georgians.  DHS is comprised of three divisions: (1) Aging Services, (2) Child Support Services, and (3) Family and Children Services. The Bibb County Department of Family and Children Services (hereinafter "Bibb County DFCS") falls under the third division.  Plaintiff was hired to work for the Bibb County DFCS on February 1, 2006.

Beginning in June of 2015, Plaintiff began asking for a reasonable accommodation due to her medical condition.  DHS responded to Plaintiff's request for an accommodation by making improper medical inquiries of her and her medical providers.  DHS finally accommodated Plaintiff more than a year after her first request for an accommodation.  On September 25, 2017, Plaintiff filed a pro se employment discrimination lawsuit against DHS under Civil Action Number 5:17-CV-365-TES.  In retaliation for engaging in protected activity such

2

Copy from re:SearchGA

as requesting a reasonable accommodation under the ADA, testifying in her employment discrimination lawsuit, and requesting an additional Notice of Right to Sue for retaliation, DHS demoted Plaintiff and reduced her pay effective May 1, 2019.  On September 3, 2019, the EEOC issued a Notice of Right to Sue.

## JURISDICTION AND VENUE

1.     This action arises under the laws of the United States, and therefore this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

2.     This action also arises under the following federal statutes: Title I of The Americans with Disabilities Act of 1990 (hereinafter "the ADA"), 42 U.S.C. §§ 12111-12117 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17.

3.     Venue is proper under 28 U.S.C. § 1391 because: (1) Defendant's principal place of business is in the State of Georgia and (2) the events or omissions giving rise to the claims alleged herein occurred in the State of Georgia in this District.

## THE PARTIES

4.     Plaintiff, QUINETTE (QWENETTE) WESTBROOKS (hereinafter "Plaintiff") is an African-American female individual and citizen of the state of Georgia.  Plaintiff resides at 5033 Nisbet Drive, Macon, Georgia 31206.

Copy from re:SearchGA

5.     Defendant DHS is a state agency organized under the laws of the State of Georgia whose principal place of business is in the State of Georgia.  DHS comprises of three divisions: (1) Aging Services, (2) Child Support Services, and (3) Family and Children Services.  The Bibb County Department of Family and Children Services (hereinafter "Bibb County DFCS") falls under the third division. DHS and Bibb County DFCS employ over 15 employees, one of which is Plaintiff, who was hired to work for the Bibb County DFCS on February 1, 2006.

## FACTS COMMON TO ALL CLAIMS

### Procedural history

6.     On September 25, 2017, Plaintiff filed her original complaint for employment discrimination under Title VII of the Civil Rights Act of 1964, as codified at 42 U.S.C. §§ 2000e to 2000e-17 and the ADA of 1990, as codified at 29 U.S.C. §§ 12112 to 12117.  (See Exhibit "1").

7.     Plaintiff alleged in her original complaint that Defendant failed to accommodate her disability, that Defendant retaliated against her when she made requests for accommodation, and that she was subjected to disparate treatment because of her race.  (See Exhibit "1").

8.     On January 23, 2019, Plaintiff provided deposition testimony in her original lawsuit for employment discrimination.

4

Copy from re:SearchGA

9.    On February 27, 2019, Plaintiff filed an Intake Questionnaire with the EEOC indicating her desire to file a Charge of Discrimination for retaliation.  (See Exhibit "2").

10.    On April 11, 2019, DHS sent Plaintiff a Notice of Demotion from Durell Price, Deputy Field Operations Director that reduced Plaintiff's pay effective May 1, 2019.  (See Exhibit "3").

11.    On July 23, 2019, Plaintiff submitted her Charge of Discrimination to the EEOC.  (See Exhibit "4").

12.    On September 3, 2019, the EEOC issued a Notice of Right to Sue. (See Exhibit "5").

### Plaintiff's requests for accommodations pursuant to the ADA

12.    In September of 2019, at the request of Defendant, Plaintiff provided Defendant with a letter from her doctor, Dr. William S. Barnes of Piedmont Orthopedic Complex dated September 19, 2019, stating that Plaintiff can return to *regular duty at work* and requesting that she be accommodated with a stand-up desk.  (See Exhibit "6").

13.    On September 24, 2019, Plaintiff received correspondence from Latoya Anthony, Human Resource Specialist, informing her that her request for a stand-up desk could affect her essential job duties and requiring Plaintiff to

Copy from re:SearchGA

complete and return two forms: (1) Certification of Serious Health Condition Form and (2) the ADA Job Functionality Form. (See Exhibit "7").

14.    Ms. Anthony clearly stated that satisfying Plaintiff's request for an accommodation was conditioned upon the completion of these forms. (See Exhibit "8").

15.    Plaintiff has completed these forms. However, to date, Plaintiff's request to be reasonably accommodated with a stand-up desk as required pursuant to the ADA has not been satisfied.

### Defendant's improper medical inquiries in violation of the ADA

16.    At the request of Defendant, Plaintiff provided Defendant with a letter from her doctor, Dr. William S. Barnes of Piedmont Orthopedic Complex dated September 19, 2019, stating that Plaintiff could return to *regular duty at work* and requesting that she be accommodated with a stand-up desk. (See Exhibit "6")

17.    On September 24, 2019, Plaintiff received correspondence from Latoya Anthony, Human Resource Specialist, stating the following:

> This letter is in response to an email notification to Compliance Management that you may have a health condition which may impact the performance of your essential job duties. In order to accurately document your health condition, you are to have your attending health care provider complete the attached Certification of Serious Health Condition Form and the ADA Job Functionality Form and forward to this office as soon as possible. It should be noted that your Manager must have documentation on file from your healthcare provider which verifies your health condition and

6

Copy from re:SearchGA

provides information on those items that could potentially negatively affect your work performance and/or prevent you from fulfilling your current job duties and responsibilities. Once you have submitted the completed documents from your healthcare provider, they will be reviewed in compliance with DHS Policy #1704 to determine consideration for a reasonable accommodation.

(See Exhibit "7").

18.     DHS has adopted a formal policy, Human Resources Personnel Policy #1703, that directly violates the ADA and states as follows:

Section C: PROCEDURES

4.     Modified duty assignments require a signed medical statement from the attending health care provider, which identifies any work-related limitations and the expected length of time for the limitations.

4.1     If additional information is needed, employees will be given the ATTENDING PHYSICIAN'S STATEMENT OF FUNCTIONAL CAPABILITY Form to be completed by the attending health care provider…

Section E: EXPIRATION OF MODIFIED DUTY ASSIGNMENT

1.     At the expiration of modified duty assignments, employees will be returned to regular duties and responsibilities with or without reasonable accommodation if approved by the attending health care provider.

(See Exhibit "15").

**Changes in Plaintiff's work status including Plaintiff's demotion and reduction in pay**

19.     On April 5, 2018, an email was sent to several of Plaintiff's CAPS

7

Copy from re:SearchGA

department coworkers advising them that they were permitted to take a voluntary demotion with no reduction in pay and without taking on any additional programs. (See Exhibit "9").

20.    Plaintiff did not receive this email.  The email was shared with Plaintiff by a coworker.

21.    These CAPS department employees were required to work only one program, Medicaid.

22.    While Plaintiff's co-workers were allowed to only work one program, Medicaid, and keep their same pay, Plaintiff was required to work three programs: (1) Medicaid, (2) Food Stamps, and (3) Adult Medicaid or risk adverse consequences including a pay reduction up to termination.  (See Exhibit "10").

23.    On April 2, 2018, Plaintiff received an email from Teresa B. Johnson, HR Generalist, South Region, indicating that because Plaintiff was already classified as an OFI Economic Support Specialist 3, she would have no reduction in pay.  (See Exhibit "11").

24.    On April 11, 2019, Plaintiff received a Notice of Demotion from Durell Price, Deputy Field Operations Director, citing as the reason for the demotion the fact that she made a "decision to maintain a work profile that includes only two Office of Family Independence (OFI) programs."  (See Exhibit "3").

Copy from re:SearchGA

25.     According to this Notice of Demotion, Plaintiff's decrease in pay was to take effect on May 1, 2019.  Plaintiff's salary at the time of her deposition on January 23, 2019 was thirty-four thousand six hundred eighty dollars ($34,680.00).  Plaintiff's salary reflecting this demotion was thirty-two thousand one hundred seventy dollars and ninety cents without merit increases ($32,170.90).  (See Exhibits "12" and "13").

## COUNT I

## DISABILITY DISCRIMINATION
## IN VIOLATION OF THE ADA

26.     Paragraphs 6 through 25, Facts Common to all Claims, above, are hereby incorporated as though each of the factual allegations was restated herein.

27.      Congress enacted the ADA in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities[.]" 42 U.S.C. § 12101(b)(1).   It found that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem[.]" 42 U.S.C. § 12101(a)(2).

28.     Title I of the ADA provides that no covered employer "shall

9

Copy from re:SearchGA

discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a).

29.     To establish a prima facie case of employment discrimination under the ADA, a plaintiff must show that: (1) she has a disability; (2) she is a qualified individual with or without a reasonable accommodation; and (3) she was discriminated against because of her disability. *Id; Holly v. Clairson Industries, LLC,* 492 F.3d 1247, 1255-56 (11th Cir. 2007); *Pritchard v. Southern Co. Services,* 92 F.3d 1130, 1132 (11th Cir. 1996); *See* 42 U.S.C. §12132.

30.      Plaintiff identifies as disabled due to several existing medical conditions, i.e. bursitis, carpal tunnel syndrome, osteoarthritis and tendonitis. Plaintiff's medical conditions severely limit her ambulatory mobility but do not affect her essential job duties.

31.     At all times relevant to the allegations of Plaintiff's original employment discrimination complaint and this Complaint, the Plaintiff's disabilities were known by, and made known to her employer by the Plaintiff.

32.     Plaintiff was otherwise qualified to perform her job-related duties

10

Copy from re:SearchGA

as her most recent performance evaluation from July 1, 2018 to June 30, 2019 rated her a "Successful Performer" and found that she met expectations for the performance period.  (See Exhibit "14").

33.     The Eleventh Circuit has held pursuant to the ADA that an employer's failure to reasonably accommodate an "otherwise qualified" disabled employee itself constitutes unlawful discrimination.

34.     Despite Plaintiff's status as an "otherwise qualified" disabled employee, DHS blatantly failed to reasonably accommodate Plaintiff as recently as September 24, 2019, just a few weeks after the Notice of Right to Sue was executed by the EEOC.

## COUNT II

## DISPARATE TREATMENT DISCRIMINATION
## IN VIOLATION OF TITLE VII

35.     Paragraphs 6 through 25, Facts Common to all Claims, above, are hereby incorporated as though each of the factual allegations was restated herein.

36.     Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin…" 42 U.S.C. § 2000e-2(a)(1).

37.     When a plaintiff relies on circumstantial evidence to prove

11

Copy from re:SearchGA

discrimination under Title VII, the court employs a burden-shifting analysis, under which the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Crawford v. Carroll*, 529 F.3d 961, 975-76 (11th Cir. 2008); *see Brown v. Ala. Dep't of Transp*., 597 F.3d 1160, 1181-82 (11th Cir. 2010).

38.     To establish a prima facie case under Title VII, and thus raise an inference of discriminatory intent, the plaintiff must show: (1) she is a member of a protected class; (2) she was qualified for the job in question; (3) she was subjected to an adverse employment action; and, (4) her employer treated similarly situated employees outside her class more favorably. *See Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003); *see Vessels v. Atlanta Indep. Sch. Sys*., 408 F.3d 763, 769 (11th Cir. 2005).

39.     Plaintiff is a member of a protected class because she is an African-American woman.

40.     Plaintiff was qualified to perform her job-related duties as her performance evaluation from July 1, 2018 to June 30, 2019 rated her a "Successful Performer" and found that she met expectations for the performance period.  (See Exhibit "14").

41.      Plaintiff's involuntary demotion from OFI Economic Support Specialist 3 to OFI Economic Support Specialist 2 and the resulting pay reduction is an adverse employment action that took effect on May 1, 2019.

12

Copy from re:SearchGA

42.     Similarly situated coworkers who were offered a voluntary demotion from OFI Economic Support Specialist 3 to the position of OFI Economic Support Specialist 1 without a change in pay and were treated more favorably than Plaintiff.

## COUNT III

### RETALIATION IN VIOLATION OF THE ADA AND TITLE VII

43.     Paragraphs 6 through 25, Facts Common to all Claims, above, are hereby incorporated as though each of the factual allegations was restated herein.

44.     The ADA and Title VII prohibit retaliation against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII and the ADA], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [thereunder]." 42 U.S.C. § 2000e-3(a).

45.     To establish a prima facie case of retaliation under the ADA and Title VII under the burden-shifting framework, and to raise an inference of discriminatory intent, the plaintiff must show that: (1) she engaged in statutorily protected conduct; (2) she experienced a materially adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *Gilliard v. Ga. Dep't of Corr.* (11th Cir. 2012); *Stewart v.*

Copy from re:SearchGA

*Happy Herman's Chesire Bridge, Inc.,* 117 F.3d 1278 (11th Cir. 1997); *Hurlbert v. St. Mary's Health Care Sys., Inc.,* 439 F.3d 1286, 1297 (11th Cir. 2006).

46.     Plaintiff engaged in statutorily protected conduct by filing the original employment discrimination lawsuit on September 25, 2017.  Plaintiff further engaged in statutorily protected conduct on January 23, 2019 when she testified at her deposition in the original employment discrimination lawsuit.  On February 27, 2019, Plaintiff engaged in statutorily protected conduct when she filed an EEOC Intake Questionnaire stating that Defendant threatened to demote her and reduce her pay in retaliation for her filing of the original employment discrimination lawsuit.  On July 23, 2019, Plaintiff engaged in statutorily protected conduct when she filed a Charge of Discrimination.

47.     On April 11, 2019, DHS sent Plaintiff a Notice of Demotion demoting her from an OFI Economic Support Specialist 3 to an OFI Economic Support Specialist 2.  This Notice reduced Plaintiff's pay effective May 1, 2019.  (See Exhibit "3").  The Notice of Demotion constitutes an adverse employment action.

48.     DHS's actions to demote Plaintiff and reduce her pay constitute prohibited retaliation for engaging in protected activity entitling the Plaintiff to compensation and damages as allowed by the ADA and Title VII.

49.     On September 3, 2019, Plaintiff further engaged in statutorily

Copy from re:SearchGA

protected conduct when she received a Notice of Right to Sue.  (See Exhibit "5").

50.     On September 19, 2019, at the request of DHS, Plaintiff provided a letter from her doctor indicating that she could return *regular duty at work* and requesting that she be accommodated with a stand-up desk.  (See Exhibit "6").

51.      On September 24, 2019, Plaintiff received correspondence from Latoya Anthony, Human Resource Specialist, informing her that her request for a stand-up desk could affect her essential job duties and requiring Plaintiff to complete and return two forms in order to receive the accommodation requested: (1) Certification of Serious Health Condition Form and (2) the ADA Job Functionality Form.  (See Exhibit "7").

52.      Ms. Anthony clearly stated that satisfying Plaintiff's request for a reasonable accommodation was conditioned upon the completion of these forms. (See Exhibit "8").

53.     To date, Plaintiff's request to be reasonably accommodated with a stand-up desk as required pursuant to the ADA has not been satisfied.

54.     DHS's refusal to reasonably accommodate Plaintiff constitutes prohibited retaliation for engaging in protected activity entitling the Plaintiff to compensation and damages as allowed by the ADA and Title VII.

## COUNT IV

## IMPROPER MEDICAL INQUIRIES
## IN VIOLATION OF THE ADA

Copy from re:SearchGA

55.     Paragraphs 6 through 25, Facts Common to all Claims, above, are hereby incorporated as though each of the factual allegations was restated herein.

56.     The ADA provides that "[a] covered entity ... shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A).

57.     Medical inquiries for the purpose of justifying an accommodation for a qualified employee are prohibited where the employee is otherwise qualified to perform her job-related functions.

58.     It is undisputed that Plaintiff was otherwise qualified to perform her job-related duties as her performance evaluation during the relevant time period, July 1, 2018 to June 30, 2019, rated her as a "Successful Performer" and found that "Mrs. Westbrooks met expectations for this performance period." (See Exhibit "14").

59.     From September 19, 2019 to the present, instead of satisfying Plaintiff's request for a reasonable accommodation, DHS has spent the time making improper medical inquiries into Plaintiff's disabilities in violation of the ADA.

60.     DHS has openly made demands upon Plaintiff that she produce

16

Copy from re:SearchGA

her medical records and the specific type of accommodation needed in order to prove her disability.

61.     In fact, DHS has used its medical records requests to delay—if not outright deny—the grant of Plaintiff's reasonable accommodation requests.

62.     DHS has adopted a formal policy, Human Resources Personnel Policy #1703, that directly violates the ADA and states as follows:

> Section C: PROCEDURES
>
> 4.     Modified duty assignments require a signed medical statement from the attending health care provider, which identifies any work-related limitations and the expected length of time for the limitations.
>
> 4.1    If additional information is needed, employees will be given the ATTENDING PHYSICIAN'S STATEMENT OF FUNCTIONAL CAPABILITY Form to be completed by the attending health care provider…
>
> Section E: EXPIRATION OF MODIFIED DUTY ASSIGNMENT
>
> 1.     At the expiration of modified duty assignments, employees will be returned to regular duties and responsibilities with or without reasonable accommodation if approved by the attending health care provider.
>
> (See Exhibit "15").

63.     DHS's medical inquiries delayed reasonable accommodations for Plaintiff and resultingly caused her medical condition to worsen.

64.     Plaintiff is entitled to damages due to DHS's improper medical inquiries into her medical condition.

Copy from re:SearchGA

**WHEREFORE,** Plaintiff respectfully urges this Court to find against Defendant Georgia Department of Human Services, based upon the above referenced violations of Plaintiff's civil and constitutional rights under, 42 U.S.C. §§ 2000e to 2000e-17 and 42 U.S.C. §§ 12112 to 12117, and to award the following relief and damages:

a)      That the Court issue a declaratory judgment finding that the Defendant's formally adopted policies requiring an employee to provide medical documentation of his/her disability and the specific type of workplace accommodation needed, to be in violation of the ADA;

b)      That the Court enjoin the Defendant from continuing to engage in unlawful employment practices whereby its employees are required to respond to medical inquires prior to being reasonably accommodated with their workplace disabilities;

c)      That the Plaintiff have and recover general and compensatory damages in an amount to be determined at trial;

d)      That the Plaintiff have and recover back pay, with interest, and where, and if appropriate, front pay, in amounts to be determined at trial;

e)      That the Plaintiff have and recover her attorney's fees and costs pursuant to 42 USC § 1988; and,

Copy from re:SearchGA

f)     That the Court issue such other and further relief as this honorable

Court deems just and necessary.

## **JURY TRIAL DEMANDED**

Plaintiff respectfully demands a trial by jury on all issues so triable.

This 25th day of November 2019.

Respectfully submitted,

**WAYNE B. KENDALL, P.C.**

*/s/ Wayne B. Kendall*
Georgia Bar No.: 414076
wbkendall2@yahoo.com


*/s/ Kimberly A. Ellison*
Georgia Bar No.: 141716
kimberly@waynebkendallpc.com

155 Bradford Square, Suite B
Fayetteville, Georgia 30215
Telephone: (770) 778-8810
Facsimile: (770) 716-2439

*Attorneys for Plaintiff*

Copy from re:SearchGA

# *EXHIBIT "9"*

Copy from re:SearchGA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| **QUINETTE WESTBROOKS,** | |
| *Plaintiff,* | |
| **v.** | **CIVIL ACTION NO.** |
| | **5:17-cv-00365-TES** |
| **GEORGIA DEPARTMENT OF HUMAN SERVICES,** | |
| *Defendant.* | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In its Motion for Summary Judgment [Doc. 29] now before the Court, Defendant Georgia Department of Human Services contends that Plaintiff Quinette Westbrooks' discrimination claims under the Americans with Disabilities Act are barred by Eleventh Amendment immunity. [Doc. 29-1 at pp. 3–6]. Defendant is correct.

In addition to her claims under the Americans with Disabilities Act, Plaintiff also asserted race-discrimination claims under Title VII. As for these claims, Defendant argues that they fail as a matter of law. [*Id.* at pp. 6–20]. While Defendant is ultimately correct that it is entitled to summary judgment on Plaintiff's Title VII claims as well, the Court's reasoning is somewhat different than the arguments presented by Defendant. Nevertheless, as discussed more fully below, the Court **GRANTS** Defendant's Motion for Summary Judgment.

Copy from re:SearchGA

# I.   **FACTUAL BACKGROUND**

Due to the Court's reasoning in this Order, the facts of this case are, for the most part, of little importance. However, in order to provide some setting for Plaintiff's claims and taking all reasonable inferences in her favor, a brief recitation of the facts of this case appears to be as follows.[1]

In June of 2015 (at the latest),[2] Defendant Georgia Department of Human Services moved Plaintiff to the first floor of her office building where it was extremely cold. [Doc. 37-1 at ¶ 2]. That same month, Plaintiff began asking for an accommodation from the cold temperature due to certain medical conditions that limited her ambulatory movement. [*Id.* at ¶ 4]. These accommodation requests continued for over a year, and during that time, the cold air aggravated Plaintiff's medical condition. [*Id.* at ¶¶ 5, 7].

On May 24, 2016, Plaintiff sent "a renewed email about the cold air aggravating her medical condition" and once again asked for an accommodation. [*Id.* at ¶ 8]. Then, over a month later, Defendant provided Plaintiff "with [a second-floor] office from

---

[1] The Court will note that the exact factual timeline is terribly hard to decipher. Plaintiff never established a definite, easy-to-follow description of exactly when Defendant committed the alleged violations against her. In fact, her deposition testimony often conflated the timing of her various alleged disabilities and medical treatments and she rarely, if ever, associated her various grievances with the same time period. The Court has waded through this record in order to ascertain the facts as best it can. However, a district court is never required to cull through a dense record in order to make a party's case for them.

[2] *See* n.1, *supra.*

2

Copy from re:SearchGA

which she could control the temperature of her work space." [Doc. 51-4 at p. 3].[3]

However, in August[4] of 2016, Plaintiff requested an ink cartridge for her individual

desk printer. [Doc. 37-1 at ¶ 14]. Rather than replace the depleted ink cartridge,

Defendant came into Plaintiff's new office and removed her individual desk printer. [*Id.*

at ¶ 14]; [Doc. 51-4 at p. 3]. Despite a request that Defendant return her printer, it did

not return it, and as a result, Plaintiff had to walk down to the first floor to a network

printer in order to obtain her work assignments. [Doc. 37-1 at ¶ 16].[5]

Put succinctly, Plaintiff maintains that Defendant's failure to provide reasonable

accommodations to her in light of her medical condition and its refusal to provide her

with an individual desk printer because of her race violates the ADA and Title VII.

## II.    THE AMERICANS WITH DISABILITIES ACT

Before embarking in what is sure to be a somewhat intensive, time-based inquiry

with respect to Plaintiff's race-discrimination claims under Title VII of the Civil Rights

Act of 1964 (Title VII), 42 U.S.C. §§ 2000e to 2000e-17, the Court, as a preliminary matter,

---

[3] *See* Fed. R. Civ. P. 56(c)(3).

[4] Even though Plaintiff provides two different months regarding *when* Defendant took her individual desk printer, it was certainly sometime around July or August of 2016. *Compare* [Doc. 37-1 at ¶ 14] *with* [Doc. 29-20, Westbrooks Depo., pp. 175:6–12, 177:9–12]. Notwithstanding Plaintiff's confusion when presenting the timeline for her case, the Court, giving her the benefit of all doubt, will consider August of 2016 as the time Defendant removed her individual desk printer. *See* Section III(B), *infra*.

[5] This was cause for concern, because Plaintiff's co-worker, Bessie Stewart, who also suffered from an ambulatory disability, was allowed to keep her individual desk printer. [Doc. 37-1 at ¶ 20]. However, as the Court explains below, the comparative facts surrounding Bessie Stewart, for purposes of this lawsuit, are irrelevant.

3

Copy from re:SearchGA

addresses Plaintiff's claims asserted under the Americans with Disabilities Act of 1990

("ADA"), 42 U.S.C. §§ 12101 to 12117.

In her Complaint, Plaintiff alleges, *inter alia*, that Defendant's failure to

accommodate her medical condition and subsequent retaliation against her for

requesting medical accommodations violates the ADA. [Doc. 1 at pp. 5–6]. Notably,

Plaintiff does not specify in her Complaint any particular provision of the ADA she

claims Defendant allegedly violated. Instead, she only asserts that Defendant's "refusal

to accommodate" her medical condition "caus[ed] [it] to worsen" and that Defendant

retaliated against her for making accommodation requests. [*Id.*]. Thus, based on her

Complaint and the parties' arguments, it appears that Plaintiff asserts her disability-

based discrimination and retaliation claims pursuant to Title I and Title V of the ADA,

respectively.

To the extent Plaintiff brings a discrimination claim under Title I of the ADA

based on Defendant's alleged failure to accommodate her disability, she is barred from

bringing this claim in federal court. After finding that Congress did not validly abrogate

states' immunity from suits for money damages brought under Title I of the ADA, the

United States Supreme Court directly held that "[s]uits in federal court by state

employees to recover money damages by reason of the State's failure to comply with

Title I of the ADA are barred by the Eleventh Amendment." *Bd. of Trs. of Univ. of Ala. v.

Garrett*, 531 U.S. 356, 356, 363–74 (2001). Plaintiff correctly argues that Georgia has

Copy from re:SearchGA

waived its sovereign immunity from federal discrimination claims brought pursuant to the ADA in state court through its legislative enactment of the Fair Employment Practices Act. [Doc. 37 at pp. 6–7]. However, her reliance on *Williamson v. Dep't of Human Resources*, is simply misplaced when it comes to her claim under Title I of the ADA brought in federal court, because the Eleventh Circuit Court of Appeals has recognized that "[a] state does not waive immunity against a federal law by waiving immunity against a similar state law." 572 S.E.2d 678, 681 (Ga. Ct. App. 2002); *Stroud v. McIntosh*, 722 F.3d 1294, 1299 n.2 (11th Cir. 2013); *see also Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91–92 (2000). Therefore, while Plaintiff could have sued Defendant for money damages under the ADA in state court, she cannot do so in this court.

Title V of the ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). This title does not contain its own remedy or procedure of redress for a violation. *See* 42 U.S.C. § 12203(c). Instead, damages for Title V's prohibition on retaliation can only be made through "[t]he remedies and procedures available under" other titles. *Marx v. Ga. Dep't of Corr.*, No. 7:12–CV–92 (HL), 2013 WL 5347395, at *3–4 (M.D. Ga. Sept. 23, 2013) (citing 42 U.S.C. § 12203(c)). Given that Plaintiff's claim under Title V of the ADA is "predicated on a violation of some other

5

Copy from re:SearchGA

ADA title," logic dictates that it must also be barred by the Eleventh Amendment. *Marx*,

2013 WL 5347359, at *4 (citing *Collazo-Rosado v. Univ. of P.R.*, 775 F. Supp. 2d 376, 384

(D.P.R. 2011)). Allowing Plaintiff to proceed on this claim "would allow her to bypass

the immunity Defendant[ ] would otherwise receive under the Eleventh Amendment"

with respect to the clearly-barred claim under Title I of the ADA. *Marx*, 2013 WL

5347395, at *4 (discussing Congress's valid abrogation of ADA claims under Title II of

the ADA and pointing out a clear distinction between the Title II claims at issue in

*Tennessee v. Lane*, 541 U.S. 509, 522–23 (1978), and the Title I claims addressed by *Garrett*,

531 U.S. at 361–63, that only implicated the Equal Protection Clause of the Fourteenth

Amendment). Thus, like her discrimination claim under Title I of the ADA, Plaintiff's

retaliation claim under Title V cannot be brought in federal court.

Based on the constitutional bar raised by the Eleventh Amendment, the Court

must **GRANT** summary judgment to Defendant on Plaintiff's ADA claims because they

only concern Titles I and V. However, a discussion as to Plaintiff's race-discrimination

claims still remains.

### III.   <u>TITLE VII</u>

Given the Eleventh Amendment's foreclosure of Plaintiff's ADA claims, Plaintiff

must show that Defendant discriminated against her on the basis of her race in order to

survive summary judgment. In addition to the ADA claims asserted in her Complaint,

Plaintiff also alleges that because of her race, she suffered an adverse employment

Copy from re:SearchGA

action and that Defendant treated a woman outside of her protected class more favorably. [Doc. 1 at pp. 4, 6]. Defendant counters by arguing that Plaintiff's race-based discrimination claims under Title VII are due to be dismissed as a matter of law and because she failed to properly exhaust her administrative remedies with the Equal Employment Opportunity Commission. [Doc. 29-1 at pp. 6–20].

A.   **Standard of Review**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).[6] "When the nonmoving party has the burden of proof at trial, the moving party is not

---

[6] Courts may consider all materials in the record, not just those cited by the parties. Fed. R. Civ. P. 56(c)(3).

Copy from re:SearchGA

required to 'support its motion with affidavits or other similar material negating the opponent's claim[]' in order to discharge this 'initial responsibility.'" *Four Parcels of Real Prop.*, 941 F.2d at 1437–38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Rather, "the moving party simply may show—that is, point out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Id.* (cleaned up). Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.*

The burden then shifts to the nonmoving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex Corp.*, 477 U.S. at 324). The nonmoving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249–50). "A mere scintilla of evidence supporting the [nonmoving] party's position will not suffice." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Anderson*, 477 U.S. at 255. Stated differently, "the judge's function is not himself to weigh the evidence and determine the

Copy from re:SearchGA

truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

"The evidence of the [nonmovant] is to be believed, and all justifiable inferences are to

be drawn in his favor." *Id.* at 255.

### B.   Charge of Discrimination

Prior to filing a Title VII claim in federal court, a plaintiff must first exhaust her

administrative remedies by timely filing a Charge of Discrimination with the Equal

Employment Opportunity Commission ("EEOC"). *Mitchell v. Univ. of N. Ala.*, 785 F.

App'x 730, 735 (11th Cir. 2019) (citing *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277,

1279 (11th Cir. 2004)). "For a charge to be timely, it must be filed within 180 days of the

last discriminatory act." *Mitchell*, 785 F. App'x at 735 (citing 42 U.S.C. § 2000e-5(e)(1)).

Thus, "generally speaking, only those claims arising within 180 days prior to the filing

of the discrimination charge are actionable." *Mitchell*, 785 F. App'x at 735 (citing *EEOC

v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002)). In some cases, however, a

continuing violation may extend the limitations period. *See Joe's Stone Crabs*, 296 F.3d at

1271. "But 'discrete, one-time employment events that should have put [a] [plaintiff] on

notice that a cause of action had accrued' do not constitute continuing violations."

*Mitchell*, 785 F. App'x at 735 (quoting *Joe's Stone Crabs*, 296 F.3d at 1271) (second

alteration in original); *see also Danielle-DiSerafino v. Dist. Sch. Bd. of Collier Cty.*, 756 F.

App'x 940, 942 n.2 (11th Cir. 2018) (per curiam) (affirming district court's decision that

Copy from re:SearchGA

the continuing violation doctrine did not apply where "each request for an

accommodation was a discrete act").

    Here, Plaintiff filed the relevant charge on April 18, 2017. [Doc. 29-46 at p. 1].

This means that only allegedly discriminatory events that occurred *after* October 20,

2016, are actionable under Title VII—anything that occurred before that date is,

consequently, time barred. While Plaintiff's case entails several allegations of

discriminatory misconduct as early as mid-2015, a review of Plaintiff's deposition and

her Response to Defendant's summary judgment motion makes clear that she filed this

lawsuit for "what happened after July 2016," not for anything that occurred in 2015.[7]

[Doc. 29-20, Westbrooks Depo., p. 104:12–14]; [Doc. 37 at p. 11 ("Plaintiff's EEOC charge

was timely filed on April 18, 2017[,] because the date of the act giving rise to the charge

was '[s]ince about 2016[ ] and continuing . . . .")]; [Doc. 26-46 at p. 1].

    Throughout this lawsuit, the parties focus heavily on Defendant's decision to

remove Plaintiff's personal printer from her use while it permitted her proffered

comparator, Bessie Stewart,[8] to keep her printer. However, as discussed below, any

---

[7] The Court notes that Defendant took Plaintiff's deposition on January 23, 2019, and that the post-July 2016 events to which Plaintiff is referring may have a great deal of importance for her second (and related) lawsuit, *Westbrooks v. Georgia Dep't of Human Services*, No. 5:19-cv-00465-TES (M.D. Ga. Nov. 25, 2019) ("*Westbrooks II*"), to the extent she timely filed her EEOC charge for those allegations, but not for this one.

[8] Given that Bessie Stewart is not the proper comparator for *this* case, the issue of Defendant's treatment of Bessie Stewart and its treatment of Plaintiff in May of 2017, must be put to Plaintiff's second lawsuit, *Westbrooks II*. Notwithstanding Defendant's line of questioning in Plaintiff's deposition taken on January 23, 2019, regarding Bessie Stewart's ability to have a printer in the exact same office Plaintiff used to be in,

Copy from re:SearchGA

comparator-based arguments with regard to Bessie Stewart and the printer removal are legally irrelevant.

At least three times in her deposition, Plaintiff states that Defendant took her printer in July of 2016. *See, e.g.*, [Doc. 29-20, Westbrooks Depo., p. 175:9–12 (confirming that Defendant took Plaintiff's printer "sometime in July of 2016")]; [*id.* at p. 177:10–12 (showing that Defendant took Plaintiff's printer when she moved up to the second floor "in July")]; [*id.* at pp. 184:24—185:1 (corroborating that "[t]he printer [Defendant] initially took away" from Plaintiff was "back in July of 2016")]. However, despite Plaintiff's apparent confusion as to *when* Defendant took her printer, the Court uses August of 2016, as the operative month in order to provide her with the latest date possible. *See* n.4, *supra.* August of 2016, however, is still outside the 180-day period immediately prior to the filing of her EEOC charge. Thus, any comparator-based argument using Bessie Stewart (or anyone for that matter) is simply irrelevant because any and all claims occurring before October 20, 2016, are not actionable in any way.[9] The only event not barred by the October 20, 2016 cut-off date concerns Plaintiff's

---

this allegation of discrimination and retaliation occurred in May of 2017. [Doc. 29-20, Westbrooks Depo., pp. 187:6—188:19]. The Court cannot consider these allegations in this lawsuit because the EEOC charge that controls this lawsuit was filed on April 18, 2017. [Doc. 29-46 at p. 1]. Thus, if Plaintiff seeks to allege that some "new" instance of discrimination and retaliation occurred in May of 2017, she could not have filed an EEOC charge for something that had yet to occur. *See generally* [Doc. 51-4]; *see also Westbrooks II*, No. 5:19-cv-00465-TES (M.D. Ga. Nov. 25, 2019), ECF No. 1-7.

[9] Thus, the Court **GRANTS** Defendant's Motion for Summary Judgment as it may relate to any Title VII claim that may have occurred prior to October 20, 2016.

Copy from re:SearchGA

complaints regarding the cold temperature in her office. [Doc. 29-20, Westbrooks Depo., pp. 185:20—186:16, 215:7—216:2]. Therefore, considering her medical condition, the obvious discriminatory allegations with which Plaintiff is concerned are the cold conditions of the first-floor office and Defendant's purported inability to accommodate her as quickly as it accommodated two white employees.

Around December 5, 2016,[10] Plaintiff claims that two white employees, Tammy Dinkins and Tina McMurray, also made complaints about their offices' extremely cold temperature. [*Id.* at pp. 164:9–19, 210:23—211:13, 215:15–22]. However, when they made temperature-related complaints to Defendant, it contacted maintenance who, according to Plaintiff, "immediately" came to check their office's temperature. [*Id.* at pp. 185:20—186:8, 215:15–22]. In contrast, Plaintiff claims that Defendant took approximately a month before it checked Plaintiff's office temperature. [*Id.* at p. 215:7–22]. Thus, she claims that "because [Tammy Dinkins and Tina McMurray are] Caucasian," they were treated better than she was. [*Id.* at p. 215:8–13]. Therefore, in order to succeed on a race-discrimination claim under Title VII, Plaintiff must demonstrate that Defendant discriminated against her on the basis of her race with regard to how quickly maintenance checked employees' temperature-related complaints.

---

[10] As previously noted, because of the 180-day filing deadline and when Plaintiff filed her EEOC charge—April 18, 2017—this is the only actionable claim that can be considered in this case.

Copy from re:SearchGA

C.    **Discussion**

Plaintiff brings her case pursuant to Title VII of the Civil Rights Act of 1964, which makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Lewis v. City of Union City*, 918 F.3d 1213, 1220 (11th Cir. 2019) (quoting 42 U.S.C. § 2000e-2(a)(1)). "The language of Title VII makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate . . . discriminatory practices and devices" used to disadvantage racial, gender, and religious minorities in the employment context. *Lewis*, 918 F.3d at 1220 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973)).

When, as here, a plaintiff is confronted with a defendant's motion for summary judgment on claims for race discrimination under Title VII, she must make a sufficient factual showing to permit a reasonable jury to rule in her favor. *Lewis*, 918 F.3d at 1220. While this can be done in a variety of ways, perhaps the most familiar—and most apt to this cas—is the three-part burden shifting framework established by the Supreme Court in *McDonnell Douglas*, 411 U.S. at 800–02. The *McDonnell Douglas* framework places the initial burden on a plaintiff to establish a prima facie case of race discrimination by proving that she was treated differently from some other "similarly situated" individual

13

Copy from re:SearchGA

or "comparator." *Lewis*, 918 F.3d at 1217 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258–59 (1981)).

When a plaintiff alleges intentional discrimination and her claim faces a defendant's motion for summary judgment, she "must present sufficient facts to permit a jury to rule in her favor[,]" to ensure her claim's survival. *Lewis*, 918 F.3d at 1220. One way of ensuring that survival is, as just mentioned, to satisfy the three-part burden-shifting framework set out in *McDonnell Douglas*, 411 U.S. at 802. *Id.* Another way, which has not been asserted in this case, is to "demonstrate a 'convincing mosaic' of circumstantial evidence that warrants the inference of discrimination." *Id.* at n.6 (citing *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2001)).

As for the *McDonnell Douglas* route, a plaintiff bears the initial burden of establishing a prima facie case of intentional discrimination. *Lewis*, 918 F.3d at 1220. This burden can be met "by showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." *Id.* at 1220–21 (citation omitted). If a plaintiff succeeds in making a prima facie case, "the burden [then] shifts to [a] defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1221 (citing *Burdine*, 450 U.S. at 253). Then, if a defendant makes such an articulation, the burden shifts back to a plaintiff who must demonstrate that the proffered, nondiscriminatory

14

Copy from re:SearchGA

reason was "merely a pretext for unlawful discrimination, an obligation that 'merges

with [a] [plaintiff's] ultimate burden of persuading the [factfinder] that she has been the

victim of intentional discrimination.'" *Lewis*, 918 F.3d at 1221 (quoting *Burdine*, 450 U.S.

at 256) (second and third alterations in original).

"[D]iscrimination," first and foremost, "consists of *treating like cases differently*[,]"

and if this true, the converse must also be true: "Treating *different* cases differently is not

discriminatory, let alone intentionally so." *Lewis*, 918 F.3d at 1222–23 (emphasis

supplied) (first citing *N.L.R.B. v. Collier*, 553 F.2d 425, 428 (5th Cir. 1977) and then citing

*Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1186 (11th Cir. 1984)). Thus, the first

burden of *McDonnell Douglas* essentially calls upon a plaintiff to show that she "was

treated *differently* from another 'similarly situated' individual"—or, a comparator. *Lewis*,

918 F.3d at 1217 (citing *Burdine*, 450 U.S. at 258–59) (emphasis added).

*Lewis* reiterates that the procedural timing of the comparator analysis, "must be

conducted at the prima facie stage of *McDonnel Douglas*'s burden-shifting framework."

*Lewis*, 918 F.3d at 1218–24. However, in *Lewis*, the Eleventh Circuit Court of Appeals

also definitively answered "[t]he obvious question: Just how 'similarly situated' must a

plaintiff and her comparator(s) be?" *Id.* at 1217. In cases like this one, "a plaintiff must

show that she and her comparators are 'similarly situated in all material respects." *Id.* at

1224.

Copy from re:SearchGA

In short, the Court concludes that Plaintiff did not make a prima facie case for race discrimination, because it does not have sufficient evidence with respect to who ought to be Plaintiff's proffered comparators for this case—Tammy Dinkins and Tina McMurray, not Bessie Stewart—to conduct a comparator analysis using the new standard announced in *Lewis*. *Id.* at 1229.

Easy points first: two of the four prongs of the prima facie case are undoubtedly satisfied. Plaintiff belongs to a protected class and given her deposition responses on the issue, the Court can easily conclude that she was "qualified to perform the job in question." *Id.* at 1220–21; [Doc. 29-20, Westbrooks Depo., p. 62:12–24 (discussing Plaintiff's disciplinary employment history)]. Accordingly, all that is left for the Court to determine is whether Plaintiff can show that Defendant's actions "subjected her to an adverse employment action" and that she and her true comparators, Tammy Dinkins and Tina McMurray, were "similarly situated in all material respects." *Lewis*, 918 F.3d at 1229. As for these two issues, there simply is not enough in the record for the Court to conclude that Plaintiff has made a prima facie case of race discrimination. Thus, Defendant is entitled to summary judgment.

First, to qualify as adverse employment action under Title VII, "the employer's action must impact the terms, conditions, or privileges of [a] plaintiff's job in a real and demonstrable way." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001), *overruled on other grounds by Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006). The

Copy from re:SearchGA

impact must be "serious and material," and a reasonable person in the circumstances presented must have found that the action was materially adverse. *Davis*, 245 F.3d at 1239.

Again, the parties heavily focus on whether Defendant's removal of Plaintiff's individual desk printer constitutes an adverse employment action; however, that incident, as discussed above, occurred in August of 2016 and is time barred by the 180-day period.[11] Consequently, the true issue becomes whether Defendant's failure to request a check of or adjust Plaintiff's office temperature as quickly as it did for two white employees qualifies as an adverse employment action. Considering the Eleventh Amendment's bar of Plaintiff's ADA claims, the Court finds her complaints about the cold air (found in her deposition testimony) to be, for Title VII purposes, descriptive of only mere discomforts.

"The Supreme Court has stressed that Title VII provides no protection against 'those petty slights or minor annoyances that often take place at work and that all employees experience.'"[12] *Harrison v. Belk, Inc.*, 748 F. App'x 936, 943 (11th Cir. 2018) (quoting *Burlington*, 548 U.S. at 68). Without more, Plaintiff has failed to articulate—on either a factual or legal basis (and the Court likewise cannot find any case law to

---

[11] While true for other instances as well, this instance, i.e., Defendant's refusal to return Plaintiff's printer, sufficiently placed her on notice that a cause of action had occurred. *Mitchell*, 785 F. App'x at 735.

[12] Even by Plaintiff's own account, she was not the only employee bothered by the cold temperature. [Doc. 29-20, Westbrooks Depo., p. 186:1–5].

17

Copy from re:SearchGA

support such a narrow claim)—that Defendant's actions regarding the cold

temperature[13] in her office is an adverse employment action for Title VII purposes.

Plaintiff, therefore, cannot make a prima facie case of race discrimination.

Even if Defendant's failure to check Plaintiff's office temperature as quickly as it

did for two white employees could possibly be stretched so far as to be considered an

adverse employment action predicated upon race discrimination, Plaintiff has not

shown that she, Tammy Dinkins and Tina McMurray are similarly situated in all

material respects. *Lewis*, 918 F.3d at 1224. Perhaps because of her mistaken focus on

Bessie Stewart (in this lawsuit), Plaintiff presents insufficient comparator-oriented

evidence with respect to Tammy Dinkins and Tina McMurray.

For instance, Plaintiff's sole evidence of discrimination is that her true

comparators—Tammy Dinkins and Tina McMurray—are white. [Doc. 29-20,

Westbrooks Depo., pp. 185:20—186:8]. That's it. As *Lewis* made crystal clear, a Title VII

plaintiff must show more than her comparators are of a different race than she. *Lewis*,

918 F.3d at 1227 (providing a non-exhaustive list by which a Title VII plaintiff may

show a valid comparator). Other than their race, Plaintiff knows nothing (that is helpful

to the Court's analysis) about Tammy Dinkins or Tina McMurray. All Plaintiff knows is

---

[13] Contrary to Plaintiff's assertion that the cold temperature "should have been based on [her] body's temperature, not somebody else's," the Eleventh Circuit Court of Appeals has clearly stated that when determining whether an action is "materially adverse," the determination is to be made from the perspective of "a reasonable person in the circumstances." *Davis*, 245 F.3d at 1239–40; [Doc. 29-20, Westbrooks Depo., p. 166:1–5]. As shown by Plaintiff's testimony, other employees equally endured cold temperatures in their offices. [*Id.* at p. 186:3–5].

Copy from re:SearchGA

that "they're in the same office [as the woman who took Plaintiff's printer]." [Doc. 29-20, Westbrooks Depo., p. 186:9–16]. She does not, however, even "know what they do." [*Id.* at p. 186:13]. This is simply not enough. With this scant amount of comparator evidence, the Court cannot conduct the requisite, comprehensive comparator analysis mandated by *Lewis* to evaluate whether Tammy Dinkins and Tina McMurray are similarly situated to Plaintiff in all material respects. *Lewis*, 918 F.3d at 1224.

Accordingly, Plaintiff failed to make a prima facie case for race discrimination under Title VII, and Defendant is entitled to summary judgment on this claim as well.

## IV.   <u>CONCLUSION</u>

Based upon the foregoing, the Court **GRANTS** Defendant Georgia Department of Human Services' Motion for Summary Judgment [Doc. 29] because (1) Plaintiff's Title I and Title V ADA claims are barred by the Eleventh Amendment, (2) all but one of her Title VII claims are time barred, and (3) because she fails to demonstrate a prima facie case of race discrimination for her sole actionable Title VII claim. The Clerk of Court is accordingly **DIRECTED** to enter Judgment in favor of Defendant and **CLOSE** this case.

**SO ORDERED**, this 27th day of January, 2020.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**

Copy from re:SearchGA

*EXHIBIT "10"*

Copy from re:SearchGA

# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF GEORGIA
# MACON DIVISON

QUINETTE (GWENETTE) WESTBROOKS )
)
                  Plaintiff, )
)
v. )      Civil Action No.
)      5:19-CV-00465-TES
GEORGIA DEPARMENT OF )
HUMAN SERVICES )
)
             Defendant. )
_____)

## **STIPULATION OF DISMISSAL WITHOUT PREJUDICE**

COMES NOW, Plaintiff QUINETTE (QWENETTE) WESTBROOKS

(hereinafter "Plaintiff"), by and through undersigned counsel, and hereby files this

STIPULATION OF DISMISSAL pursuant to 28a U.S.C. Rule 41(a)(1)(A)(ii), and

hereby dismisses the above-styled civil action WITHOUT PREJUDICE. Each

party shall pay its own fees and costs.

This 7th day of May 2020.

[signatures on the following page]

Copy from re:SearchGA

Respectfully submitted by:

**WAYNE B. KENDALL, P.C.**

/s/ Wayne B. Kendall
Georgia Bar No.: 414076
wbkendall2@yahoo.com

/s/ Kimberly A. Ellison
Georgia Bar No.: 141716
kimberly@waynebkendallpc.com

155 Bradford Square, Suite B
Fayetteville, Georgia 30215
Telephone: (770) 778-8810
Facsimile: (770) 716-2439

*Attorneys for Plaintiff*

Consented to by:

/s/ Mary Catherine Greaber
Georgia Bar No.: 441858
mgreaber@law.ga.gov

Assistant Attorney General
40 Capital Square SW
Atlanta, Georgia 30334-1300
Telephone: (404) 656-5331 Facsimile:
(404) 657-9932

*Attorney for Defendant*

Copy from re:SearchGA

Case 9:19-cv-00465-TES Document 9 Filed 05/07/20 Page 3 of 3

Copy from re:SearchGA

*EXHIBIT "11"*

Copy from re:SearchGA



**Piedmont ORTHOPAEDIC Complex**

4660 Riverside Park Blvd., Macon, Georgia 31210

478-474-2114

Date: _____ 9·19·19 _____

Re: _____ Quinette westbrooks _____

Date of Birth: _____ ▮▮▮ ▮ ▮ _____

To whom it may concern:

The above named patient was seen in my office today for a scheduled appointment.

The above named patient is under my care and (will) (will not) be allowed to return to (reg.) (light) duty work on _____ with the following restrictions.

- o No Bending
- o No Stooping
- o No Climbing
- o No Squatting
- o Alternate Sitting & Standing
- o Limited Use of Extremity
- o No Crawling
- ⊗ Other _Crutches - partial weightbearing on right knee. F/u after right knee MRI. It would be helpful for her to have a standup desk._

The above named patient is under my care and will be allowed to return to school on _____ with the following restrictions.

- o No P.E. activities until further notice
- o Other _____

_ William S. Barnes, MD
_ Ashley Peppers, N.P.C
o Joshua Young, N.P.

AShPR FNP-c

# *EXHIBIT "12"*

Copy from re:SearchGA

**kimberly@waynebkendallpc.com**

| | |
|---|---|
| **From:** | Westbrooks, Gwenette D <Gwenette.Westbrooks@dhs.ga.gov> |
| **Sent:** | Wednesday, October 2, 2019 11:21 AM |
| **To:** | Kimberly Ellison |
| **Subject:** | FW: FMLA/Accommodation Request Quinette Westbrooks ▮▮▮▮ |



**GWENETTE WESTBROOKS** | ECONOMIC SUPPORT
SPECIALIST 3
**GEORGIA DIVISION OF FAMILY** & CHILDREN SERVICES

456 Oglethorpe St, 240 | Macon, GA 31201
**O.** 4787513178 **C.** 4783907759 **F.** 4787513309

**EMAIL: GWENETTE.WESTBROOKS@DHS.GA.GOV**
DFCS.GEORGIA.GOV



**BLUEPRINT FOR CHANGE ✚ A STATE OF HOPE ⚥**
**SAFE CHILDREN.   STRENGTHENED FAMILIES.   STRONGER GEORGIA.**



**From:** Westbrooks, Gwenette D <Gwenette.Westbrooks@dhs.ga.gov>
**Sent:** Wednesday, October 02, 2019 11:09 AM
**To:** DFCSOFI-FML <DFCSOFI-FML@dhs.ga.gov>
**Cc:** Westbrooks, Gwenette D <Gwenette.Westbrooks@dhs.ga.gov>
**Subject:** RE: FMLA/Accommodation Request Quinette Westbrooks ▮▮▮▮

I have forwarded this information to my attorneys to review first  Non of my questions are being answered, I am just receiving forms to complete, my question was do I have to take interim leave, if not I can use my leave to go to therapy when it is scheduled . I will have to miss time  from work but most likely I will schedule them at  the same time I just don't know the therapist availability yet.  Per policy if you will miss a certain number of hours from work a month and I think it is 17 hour then you have to take interim leave and I need to know how that works, I will just go and talk to someone in HR, I think there is someone in our office



**GWENETTE WESTBROOKS** | ECONOMIC SUPPORT
SPECIALIST 3
**GEORGIA DIVISION OF FAMILY** & CHILDREN SERVICES

456 Oglethorpe St, 240 | Macon, GA 31201
**O.** 4787513178 **C.** 4783907759 **F.** 4787513309

**EMAIL: GWENETTE.WESTBROOKS@DHS.GA.GOV**
DFCS.GEORGIA.GOV



**BLUEPRINT FOR CHANGE ✚ A STATE OF HOPE ⚥**
**SAFE CHILDREN.   STRENGTHENED FAMILIES.   STRONGER GEORGIA.**

1

Copy from re:SearchGA

**From:** DFCSOFI-FML <DFCSOFI-FML@dhs.ga.gov>
**Sent:** Wednesday, October 02, 2019 10:49 AM
**To:** Westbrooks, Gwenette D <Gwenette.Westbrooks@dhs.ga.gov>
**Subject:** FMLA/Accommodation Request Quinette Westbrooks 0████

Good Morning,

I received a document on yesterday (attached) advising that you will need time off for physical therapy. In order for us to review your case and make a determination, you will also have to submit the additional  form that was initially requested on September 24, 2019 (attached). Once we receive the required document, we can process both your accommodation request and your intermittent FML request at the same time. Please let me know if you have any questions. Thank You!

**Follow the instructions detailed below to submit all FML and ADA requests:**

| Administrative Offices | Division of Aging Services (DAS) | Division of Child Support Services (DCSS) | Division of Family Children Services CWS (DFCS CWS) | Division of Family Children Services OFI (DFCS OFI) |
|---|---|---|---|---|
| ADMIN-FML@dhs.ga.gov Fax: 770-357-7478 | DAS-FML@dhs.ga.gov Fax: 770-357-7478 | DCSS-FML@dhs.ga.gov Fax: 770-357-7478 | DFCSCW-FML@dhs.ga.gov Fax: 770-359-3697 | DFCSOFI-FML@dhs.ga.gov Fax: 770-359-3697 |
| **All Admin Offices** IES        OHR OBA       OIG OC          OIT OED        OLAO OFS        OPC OFSS       OSPI OGC Refugee Resettlement | **All DAS Offices** | **All DCSS Offices** | **All DFCS CWS Offices** *including* CICC Education & Training Regional Accounting SIU State Office (2 Peachtree) | **All DFCS OFI Offices** *including* CCC Education & Training Rev Max State Office (2 Peachtree) Systems Reform |

*Please Note: ALL (FML and ADA) Certification Forms and ALL inquiries **MUST** be submitted to your assigned Division or Administrative Office **FML Email Address Box or Fax** ONLY to be processed.*

**Navigating the New Process**

All Serious Health Condition Family and Medical Leave Forms and all supporting documents must be completed and submitted to your assigned HR Specialist for review and approval.

- **Step 1: Determine Eligibility Criteria**
  - Do you or a covered family member have a serious health condition or qualifying reason
  - Have you been employed with the Agency for at least 12 months?
  - Have you worked 1,250 hours in the 12 months preceding your request for FML

- **Step 2:  Obtaining Certification Forms**

Copy from re:SearchGA

- Go to the Department of Human Services web page by entering the following web address https://dhs.georgia.gov/ in your web browser.
- Click on the Employee Intranet link located in the upper right corner of the page.
- Click on the Login link. The **eIntranet** Login box will appear. Enter your SOG Login in the Username Field, then enter SOG password in the Password Field.
- Click on the **Division and Office** tab, select **Office of Human Resources**, and **FML and ADA**
- Click on the FMLA Leave Forms link and select the appropriate Serious Health Certification forms.

- **Step 3: Completing Certification Forms**
  - Print the applicable Certification of Serious Health Condition forms and have your healthcare provider complete them in their entirety. *Note: incomplete certifications forms may result in delay in processing your request.*

- **Step 4: Submitting Certification Forms**
  - **Option one:** You may scan and email your completed forms to the **FML Email Box Address** designated for your Division or Administrative Office.
  - **Option two:** Your healthcare provider may submit your completed forms to the **Fax** number designated for your Division or Administrative Office.

- **Step 5: Notification**
  - Once your HR Specialist confirms receipt of your forms, allow five business day for review and processing. You will receive a written notification of your status via email.

> *Please Note: Your FML Certification forms should be emailed or faxed to your HR Specialist (30) days prior to your scheduled leave. When the need for FML is not foreseeable, such as for a medical emergency or other unforeseen events, at minimum a verbal notice must be provided as soon as practicably possible to your supervisor or to your assigned HR Specialist to initiate the FML process.*

Warmest Regards,

**Latoya Anthony**
Human Resources Specialist, Compliance Management
Office of Human Resources
Georgia Department of Human Services
Two Peachtree Street
Suite 28-493
Atlanta, GA 30303
404-463-2368 (O) | 770-357-7596 (F)
DFCSOFI-FML@dhs.ga.gov

---

**From:** DFCSOFI-FML <DFCSOFI-FML@dhs.ga.gov>
**Sent:** Wednesday, September 25, 2019 4:32 PM
**To:** Westbrooks, Gwenette D <Gwenette.Westbrooks@dhs.ga.gov>
**Subject:** RE: Accommodation Request Quinette Westbrooks ███

You are welcome!

Warmest Regards,

Copy from re:SearchGA

**Latoya Anthony**
Human Resources Specialist, Compliance Management
Office of Human Resources
Georgia Department of Human Services
Two Peachtree Street
Suite 28-493
Atlanta, GA 30303
404-463-2368 (O) | 770-357-7596 (F)
DFCSOFI-FML@dhs.ga.gov

---

**From:** Westbrooks, Gwenette D <Gwenette.Westbrooks@dhs.ga.gov>
**Sent:** Wednesday, September 25, 2019 10:08 AM
**To:** DFCSOFI-FML <DFCSOFI-FML@dhs.ga.gov>
**Subject:** RE: Accommodation Request Quinette Westbrooks 0 

I will let you know if I will proceed with this, or just wait until one comes available because as I stated earlier I had tried to win for years , but since they were giving them away to people that requested one not because of accommodation needed but  just because they wanted one  I requested one and asked to be put on the waiting list like the other employees, but I guess because I have some medical problems management felt that getting a statement from my doctor would expedite the process, you are now saying by me requesting a stand up desk is part of my essential job duties, but for other worker it  is not,   I will let you know either way what I will do.  Thanks for your help



**GWENETTE WESTBROOKS** | ECONOMIC SUPPORT
SPECIALIST 3
**GEORGIA DIVISION OF FAMILY** & CHILDREN SERVICES

456 Oglethorpe St, 240 | Macon, GA 31201
**O.** 4787513178 **C.** 4783907759 **F.** 4787513309

**EMAIL: GWENETTE.WESTBROOKS@DHS.GA.GOV**
DFCS.GEORGIA.GOV




---

BLUEPRINT FOR CHANGE ✚ A STATE OF HOPE ═
SAFE CHILDREN.   STRENGTHENED FAMILIES.   STRONGER GEORGIA.

---

**From:** DFCSOFI-FML <DFCSOFI-FML@dhs.ga.gov>
**Sent:** Wednesday, September 25, 2019 9:21 AM
**To:** Westbrooks, Gwenette D <Gwenette.Westbrooks@dhs.ga.gov>
**Subject:** RE: Accommodation Request Quinette Westbrooks

Good Morning,

Yes, the attachments that were sent to you are the required doctor's statements that must be completed to process your request. Please let us know if we may assist further in the meantime. Thank You.

Warmest Regards,

**Latoya Anthony**
Human Resources Specialist, Compliance Management

4

Copy from re:SearchGA

Office of Human Resources
Georgia Department of Human Services
Two Peachtree Street
Suite 28-493
Atlanta, GA 30303
404-463-2368 (O) | 770-357-7596 (F)
DFCSOFI-FML@dhs.ga.gov

---

**From:** Westbrooks, Gwenette D <Gwenette.Westbrooks@dhs.ga.gov>
**Sent:** Tuesday, September 24, 2019 2:58 PM
**To:** DFCSOFI-FML <DFCSOFI-FML@dhs.ga.gov>
**Subject:** RE: Accommodation Request Quinette Westbrooks ███████

I will check on completing the forms , I have been trying to get a stand up desk for a while now , they were giving them away to employees that wanted one not because of medical reason, and I have been trying to win one for years but no success and I was not aware that they had extra ones and giving them to employees that wanted one. I asked for one because I start having problems with sitting a long time , and I was told that they had a waiting list , and to send an email to my supervisor, ,the administrator and district Manager  and I requested to be put on the waiting list, but I then I received a call saying that If I got a doctor statement then they could order me one and expedite the process, because they didn't have any more now  .I provided a statement,  from my doctor requesting a standup desk , are you saying you need more information The standup desk  have been given away to employees that just requested one without a doctor statement , I am having to request accommodation for one .  I will get back with you on the stand up desk
Thank you




**GWENETTE WESTBROOKS** | ECONOMIC SUPPORT
SPECIALIST 3
**GEORGIA DIVISION OF FAMILY** & CHILDREN SERVICES

456 Oglethorpe St, 240 | Macon, GA 31201
**O.** 4787513178 **C.** 4783907759 **F.** 4787513309

**EMAIL: GWENETTE.WESTBROOKS@DHS.GA.GOV**
DFCS.GEORGIA.GOV

---

BLUEPRINT FOR CHANGE ✚ A STATE OF HOPE ⚤
SAFE CHILDREN.   STRENGTHENED FAMILIES.   STRONGER GEORGIA.

---

**From:** DFCSOFI-FML <DFCSOFI-FML@dhs.ga.gov>
**Sent:** Tuesday, September 24, 2019 1:16 PM
**To:** Westbrooks, Gwenette D <Gwenette.Westbrooks@dhs.ga.gov>
**Cc:** Freeman, Vonretta F. <vonretta.freeman@dhs.ga.gov>
**Subject:** Accommodation Request Quinette Westbrooks 0███████0

September 24, 2019

████████

*By Email and US Mail*

Copy from re:SearchGA

Quinette Westbrooks

████████████████
████████████████

Dear Quinette:

This letter is in response to an email notification to Compliance Management that you may have a health condition which may impact the performance of your essential job duties. In order to accurately document your health condition, you are to have your attending health care provider complete the attached Certification of Serious Health Condition Form and the ADA Job Functionality Form and forward to this office as soon as possible.

It should be noted that your Manager must have documentation on file from your healthcare provider which verifies your health condition and provides information on those items that could potentially negatively affect your work performance and/or prevent you from fulfilling your current job duties and responsibilities.

Once you have submitted the completed documents from your healthcare provider, they will be reviewed in compliance with DHS Policy #1704 to determine consideration for a reasonable accommodation.

Should you have any questions on the above, please contact Latoya Anthony, Human Resource Specialist at 404-463-2368.

Sincerely,



Latoya Anthony
HR Specialist

cc: Vonretta Freeman
     Data Transactions

Warmest Regards,

**Latoya Anthony**
Human Resources Specialist, Compliance Management
Office of Human Resources
Georgia Department of Human Services
Two Peachtree Street
Suite 28-493
Atlanta, GA 30303
404-463-2368 (O) | 770-357-7596 (F)
DFCSOFI-FML@dhs.ga.gov

Copy from re:SearchGA

*EXHIBIT "13"*

Copy from re:SearchGA

**Brian P. Kemp**
Governor



**Robyn A. Crittenden**
Commissioner

## **Georgia Department of Human Services**

Aging Services | Child Support Services | Family & Children Services

September 24, 2019

███████████

*By Email and US Mail*

Quinette Westbrooks

█████████████████

Dear Quinette:

This letter is in response to an email notification to Compliance Management that you may have a health condition which may impact the performance of your essential job duties. In order to accurately document your health condition, you are to have your attending health care provider complete the attached Certification of Serious Health Condition Form and the ADA Job Functionality Form and forward to this office as soon as possible.

It should be noted that your Manager must have documentation on file from your healthcare provider which verifies your health condition and provides information on those items that could potentially negatively affect your work performance and/or prevent you from fulfilling your current job duties and responsibilities.

Once you have submitted the completed documents from your healthcare provider, they will be reviewed in compliance with DHS Policy #1704 to determine consideration for a reasonable accommodation.

Should you have any questions on the above, please contact Latoya Anthony, Human Resource Specialist at 404-463-2368.

Sincerely,

*Latoya Anthony*

Latoya Anthony
HR Specialist

cc: Vonretta Freeman
    Data Transactions

Copy from re:SearchGA

# *EXHIBIT "14"*

Copy from re:SearchGA

**GEORGIA DEPARTMENT OF HUMAN SERVICES**
**Human Resource/Personnel Policy #1703**

## MODIFIED DUTY ASSIGNMENT DUE TO NON-WORK-RELATED INJURY/ILLNESS

**EFFECTIVE DATE:** December 14, 2010      **RELEASE DATE:** September 1, 2001
                                                                     **Revised:** September 26, 2017

Employees who are absent from work due to a non-work-related injury/illness should return to work on a temporary, modified duty assignment as soon as possible. Modified duty assignments may be modifications in employees' usual duties and/or responsibilities or may be temporary assignments of different duties within the organization.

(Section A)
**ELIGIBLE EMPLOYEES**      All full-time and part-time employees in classified and unclassified positions, except for temporary employees [time-limited duties not expected to exceed nine (9) months] and hourly employees, are eligible for modified duty assignments.

(Section B)
**TIME FRAMES**

1. Modified duty assignments may be made for the length of time that is determined necessary by the attending health care provider, not to exceed sixty (60) calendar days within a 12-month period.

2. Management has the option of extending modified duty assignments for up to ten (10) calendar days beyond the 60-calendar day limit, if the additional time is needed to make work-related arrangements for employees.

(Section C)
**PROCEDURES**

1. Guidelines should be developed in each organization to implement a modified duty assignment program.

2. Eligible employees who are medically released by the attending health care provider to return to work with temporary restrictions should be considered for modified duty.

     **NOTE: Modified duty assignments may be requested by employees or required by managers.**

3. Each employee should be evaluated individually for a modified duty assignment based on the following:

     3.1 Limitations established by the attending health care provider;

---

Policy #1703             Revised 9/26/17             Page 1 of 3



EXHIBIT
B

**QW-DHS 00002**

Copy from re:SearchGA

## MODIFIED DUTY ASSIGNMENT DUE TO NON-WORK-RELATED
## INJURY/ILLNESS (continued)

        3.2   Skills of the employee; and,

        3.3   Needs of the organization.

4.     Modified duty assignments require a signed medical statement from the attending health care provider, which identifies any work-related limitations and the expected length of time for the limitations.

        4.1   If additional information is needed, employees will be given the *ATTENDING PHYSICIAN'S STATEMENT OF FUNC-TIONAL CAPABILITY* Form to be completed by the attending health care provider.

        4.2   A completed *DETAILED JOB ANALYSIS* Form or other relevant job description information will be attached to assist the attending health care provider in completing a medical evaluation in relation to the essential functions of the position.

        **NOTE: The *ATTENDING PHYSICIAN'S STATEMENT OF FUNCTIONAL CAPABILITY* Form and *DETAILED JOB ANALYSIS* Form are both available on the Internet on ODIS Web Site at the following address:**

        http://odis.dhs.ga.gov/Main/Default.aspx

**(Section D)**
**NON-COMPLIANCE**

If employees refuse to report for (or otherwise through their actions decline) modified duty assignments when properly released by the attending health care provider, supervisors should notify OHR. Employees may be subject to disciplinary action, up to and including separation from employment.

**(Section E)**
**EXPIRATION OF MODIFIED DUTY ASSIGNMENT**

1.    At the expiration of modified duty assignments, employees will be returned to regular duties and responsibilities with or without reasonable accommodation if approved by the attending health care provider.

---

QW-DHS 00003

Copy from re:SearchGA

## MODIFIED DUTY ASSIGNMENT DUE TO NON-WORK-RELATED
## INJURY/ILLNESS (continued)

2.  If the attending health care provider does not release an employee for unrestricted duty at the expiration of the modified duty assignment, the employee must request the appropriate leave or leave of absence without pay to cover the absence from work. An employee who does not appropriately request approval for absence from work may be subject to disciplinary action, up to and including separation from employment.

(Section F)
**FAMILY AND
MEDICAL
LEAVE**

Employees are to be placed on available family and medical leave (FML) when absent from work due to a non-work-related injury/illness which also qualifies as a serious health condition under FML. This includes absences from work while employees work on an intermittent or reduced schedule as part of a modified duty assignment.

For additional information or assistance, please contact your local Human Resource Office, or email DHS-Policies@dhs.ga.gov.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

QW-DHS 00004

Copy from re:SearchGA

*EXHIBIT "15"*

Copy from re:SearchGA

**From:** Kent, Inez
**Sent:** Thursday, April 05, 2018 1:49 PM
**To:** Acosta, Gebarb A <Gebarb.Acosta@dhs.ga.gov>; Kirby, Sherry <Sherry.Kirby@dhs.ga.gov>; Hayes, Adrienne J <Adrienne.Hayes@dhs.ga.gov>; Keaton, Courtney M <Courtney.Keaton@dhs.ga.gov>; McKinney, Elizabeth G <Elizabeth.McKinney@dhs.ga.gov>; Hardy, Bruce L <Bruce.Hardy@dhs.ga.gov>; Gaines, Gwendolyn . <Gwendolyn.Gaines@dhs.ga.gov>; Collins, Pamela A <Pamela.Collins@dhs.ga.gov>
**Cc:** Nino, Judy <Judy.Nino@dhs.ga.gov>; Miller, Audrey <audrey.miller@dhs.ga.gov>; Kent, Inez <Inez.Kent1@dhs.ga.gov>
**Subject:** Information need for PERM staff only
**Importance:** High

Please note:  At this time, this information is for **Perm staff ONLY**, not the temp staff.  Request for Temp staff information will come at a later date.  *DO not copy the temp staff at this time.*

Per the request of Ms. Fairley, please ask the **PERM** staff to sign the attached Voluntary Demotion letter attached and complete the State of Ga. Application and the release of information form and return to you by Tuesday at 10:00 am so that the forms can be submitted to Ms. Fairley.  Please put each workers information in a separate attachment/file, do not scan all in one attachment.  Please submit these forms  to Judy Nino, Audrey Miller and myself no later than 12:00 Noon on Tuesday 4/10/18.

Please note:  The voluntary demotion letter states **no reduction in pay,** so whatever pay the worker is currently, will remain even the job classification may change.  The new job classification is for an Economic Support Specialist 1, SS070, grade E.  Workers will be trained in the Medicaid field and will have to complete the program training and pass the course test with at least an 80% to maintain employment.

1

Copy from re:SearchGA

Mrs. Carla Fairley

Assistant Deputy Division Director

Office of Family Independence

RE: CAPS Transition

By signature below I understand that I will be offered an OFI position as Economic Support Specialist 1, SS070, grade E, with NO loss in pay and will be trained in the Medicaid program. I also understand that a passing score of at least 80% on the couse exam will be required to maintain employment.

_____                    _____

Signature                                                                                        Date

Copy from re:SearchGA

Attachments: voluntary demotion Letter
State of Ga. Application
Release of information

Request for supervisors information will come at a later date also. Again, this is currently only for the permanent staff. If you have any questions, please advise.

Inez Kent
DFCS CAPS Project Manager
Office # 912-568-7246
Fax # 912-568-7196
CELL 912-347-0088
Wheeler DFCS
Alamo, Ga. 30411

2

Copy from re:SearchGA

# *EXHIBIT "16"*

Copy from re:SearchGA

## Westbrooks, Gwenette D

| | |
|---|---|
| From: | Westbrooks, Gwenette D |
| Sent: | Thursday, March 29, 2018 11:12 AM |
| To: | Perdue, Stephen F |
| Subject: | RE: ABD Third Program |

Yes my cell number is 478-390-7759

From: Perdue, Stephen F
Sent: Thursday, March 29, 2018 10:57 AM
To: Westbrooks, Gwenette D <Gwenette.Westbrooks@dhs.ga.gov>
Subject: RE: ABD Third Program

Good Morning,

Wil you be available at 11:30 for me to call you?

Thanks,

Stephen

From: Westbrooks, Gwenette D
Sent: Wednesday, March 28, 2018 1:15 PM
To: Perdue, Stephen F <Stephen.Perdue@dhs.ga.gov>
Cc: Westbrooks, Gwenette D <Gwenette.Westbrooks@dhs.ga.gov>
Subject: FW: ABD Third Program

Mr. Perdue I sent you an email on the 21st of this month regarding a conversation we had. I have not had a response back so I am at a standstill . I know you talked about training for April.

From: Westbrooks, Gwenette D
Sent: Wednesday, March 21, 2018 11:25 AM
To: Perdue, Stephen F <Stephen.Perdue@dhs.ga.gov>
Cc: Westbrooks, Gwenette D <Gwenette.Westbrooks@dhs.ga.gov>
Subject: ABD Third Program

Good Morning Mr. Perdue

I am sending this email In regards to our conversation on yesterday as to me having to have a third program added to my jog assignment, because I am a E-3, at that time it was explained to me that because of the raise I received last year this was the reason why I was having to do a third program, and if I didn't do the third program my salary would be decreased, and My concern was that ABD was a very intense Program and that, doing Medicaid, Snaps and ABD created more use of my hand where I have had four surgeries on my hand related to competitive use and the last evaluation I received in January . I was told that I needed to consider taking a job where I had to use my hand lesser, because by the time I retire, I would be having very serious problems with my hands. The desk that I have sat at and sitting at now is not set up for someone that does as much typing that I have to do, but with a that being said I have decided to take the program because I really don't have a choice, either take the position or lose your pay

1

*12*

Copy from re:SearchGA

This is why when I was moved to childcare in 2016 I asked for something in writing regarding my employment because I was moved from childcare to Foodstamps and Medicaid because there was not enough work to do even so I was not the last hired into that department I was moved, and I was placed back in childcare in 2016 and less than 6 months we were told that there would no longer be childcare that that they were moving to DECAL and we would need to apply for positions and that no one would lose their employment, but when I went out on leave and came back December of 2017. I was shown a letter that I would lose my employment and no one would be placed in a position But I have not lost my employment and I am grateful for that , but I just feel that I have not been given the same opportunities as other, because I am just flipped back and forth without choices, where people with no work history of being a state employee and have every opportunity and had choices. I feel that Nepotism plays an important role here in Bibb County when it comes to fairness . This will be my fifth  move since her at DFAC and four is because I feel it was easier to move me rather than hold people accountable .   I asked questions regarding this raise last year and never received a response back from anyone.  If you can let me know when the training starts so I can adjust my schedule for my physical therapy.

Thank you
Quinettte Westbrooks

2

Copy from re:SearchGA

*EXHIBIT "17"*

Copy from re:SearchGA

**Westbrooks, Gwenette D**

| | |
|---|---|
| **From:** | Westbrooks, Gwenette D |
| **Sent:** | Tuesday, April 03, 2018 12:40 AM |
| **To:** | Johnson, Teresa B |
| **Cc:** | Boone, Beverly; Austin, Janice |
| **Subject:** | Re: check salary |

Yes I looked at paperwork and its reflecting that I am a ess3, but before transferred to childcare in 2016 I was doing two programs. I received the raise in March 2017. I was not aware at the time I was a ess3. I am now being told that because I received the raise that I had to do more programs which is ABD. I questioned this because I know ABD has about 28 programs alone and I would be doing ABD, Foodstamps and Family Medicaid. I was told if I didn't want to do ABD, Foodstamps and Family Medciaid. I would have to take cut in pay. That they didn't know how much the decrease would be so this is why I am reaching out to Human Resources to find out what would be the decreased amount if I just did the two programs which would be ess2. I have had four surgery on my hand and if more typing is required. I have to take that into consideration before accepting the ABD, I was told that there is a differential pay of a ess2 and ess3. I just need to know how the Is the difference in the two. I have already talked to to Mr. Perdue, he is the one that came to me about this.

**From:** Johnson, Teresa B
**Sent:** Monday, April 2, 2018 4:47:14 PM
**To:** Westbrooks, Gwenette D
**Cc:** Boone, Beverly; Austin, Janice
**Subject:** RE: check salary

According to the Peoplesoft System and the Smile payroll system you are already on a ESS3 position so your salary should not change. You need to talk to your supervisor and manager to discuss if there will be a change and what your limitations are.

Janice Austin can assist you if you need assistance in providing verification of your limitations.

Teresa B. Johnson, PHR, SHRM-CP
HR Generalist (PSW) - South Region
Office of Human Resources
Georgia Dept. of Human Services
163 Blue Ridge Highway
Blairsville, GA 30512
(706) 781-2423 (O)
(888) 284-3580 (F)
Teresab.johnson @dhs.ga.gov

*Coming Soon---HR Pass...faster, friendlier, easier!*



1

Copy from re:SearchGA

# *EXHIBIT "18"*

Copy from re:SearchGA

BRIAN P. KEMP
GOVERNOR

TOM C. RAWLINGS
DIRECTOR

August 9, 2019

Quinette (Gwenette) Westbrooks

Dear Ms. Westbrooks:

This letter confirms your involuntary demotion from Economic Support Specialist (ESS) 3, paygrade G, to the position of Economic Support Specialist (ESS) 2, pay grade F, with the Division of Family and Children Services, effective May 1, 2019.

In reference to your email dated June 5, 2019, you asked "I would like to know if you can provide me with an explanation as to why the decreased amount the Attorney General sent my attorney was $34,680.00 to $32,814.32 and the letter dated April 11, 2019 decreased amount is $34,680.00 to $32,170.00." The total salary calculation that was quoted in the letter from the Attorney General's office (dated November 2, 2018), in the amount of $32,814.32, mistakenly included a 2% merit increase for 2018. However, there was no 2% merit increase for state employees in 2018. The explanation below represents the correct breakdown of your compensation as a result of your demotion:

| | |
|---|---|
| Salary on 04/30/2019 as an ESS3: | $34,680.00 |
| Salary effective on 05/1/2019, for demotion to ESS2: | $32,170.90[1] |
| 2% Merit Increase for 2019 (effective 07/01/2019): | + 643.42 |
| Current Salary (w/ 2019 merit increase): | $32, 814.32 |

The Economic Support Specialist (ESS) 2 role is considered a full-time, non-exempt level position with consideration of the Fair Labor Standards Act (FLSA). This position is also an unclassified position under the State Personnel Board Rules; therefore, this action may not be appealed.

If you have any additional questions or concerns, please contact me directly at 404-206-5651.

Sincerely,

*BJ Adams-Robinson*

Brenetia Adams-Robinson
Division HR Manager, DFCS-OFI

---

[1] In the demotion letter you received, dated 04/11/2019, $32,170.00 was quoted as your new salary. The Department has since corrected the salary quoted to include the additional 90 cents and will disperse this additional amount to you.

**BLUEPRINT FOR CHANGE ✚ A STATE OF HOPE ☰**
**SAFE CHILDREN.   STRENGTHENED FAMILIES.   STRONGER GEORGIA.**

Copy from re:SearchGA

c: Durell Price – OFI Deputy Field Operations Director

Copy from re:SearchGA

*EXHIBIT "19"*

Copy from re:SearchGA



BRIAN P. KEMP
GOVERNOR

TOM C. RAWLINGS
DIRECTOR

September 30, 2019

Quinette (Gwenette) Westbrooks



Dear Ms. Westbrooks:

This letter confirms your involuntary demotion from Economic Support Specialist (ESS) 3, paygrade G, to the position of Economic Support Specialist (ESS) 2, pay grade F, with the Georgia Department of Human Services ("Department") Division of Family and Children Services, effective May 1, 2019. This letter also amends the correspondence you received from me concerning your demotion, dated 8/9/19, as follows:

In reference to your email dated June 5, 2019, you asked "I would like to know if you can provide me with an explanation as to why the decreased amount the Attorney General sent my attorney was $34,680.00 to $32,814.32 and the letter dated April 11, 2019 decreased amount is $34,680.00 to $32,170.00." The Department has determined that the total salary calculation quoted in the letter from the Attorney General's office (dated November 2, 2018), in the amount of $32,814.32, reflects the correct salary based on your demotion that became effective on 5/1/2019. The summary below has been updated, in bold, to reflect the corrections to your salary.

| | |
|---|---|
| Salary on 04/30/2019 as an ESS3: | $34,680.00 |
| Salary effective on 05/1/2019, for demotion to ESS2 **(includes the 7/1/2017 merit increase)**: | **$32,814.32[1]** |
| 2% Merit Increase for 2019 (effective 07/01/2019): | + **656.29** |
| Current Salary (w/ 2019 merit increase): | **$33,470.61** |

The difference in any salary owed to you based on the amended calculations above, will be included in your paycheck for the next effective pay period. The Economic Support Specialist 2 (ESS2) role is considered a full-time, non-exempt level position with consideration of the Fair Labor Standards Act (FLSA). This position is also an unclassified position under the State Personnel Board Rules; therefore, this action may not be appealed.

---

[1] In the demotion letter you received, dated 04/11/2019, $32,170.00 was quoted as your new salary. The Department has determined that $32,170.00 was not the correct salary, since this amount did not account for the 2% merit increase you received on 7/1/2017. $32,814.32 is the correct salary calculation, as this amount includes your 7/1/2017 merit increase.

BLUEPRINT FOR CHANGE ✚ A STATE OF HOPE ≡
SAFE CHILDREN.   STRENGTHENED FAMILIES.   STRONGER GEORGIA.

Copy from re:SearchGA

If you have any additional questions or concerns, please contact me directly at 404-206-5651.

Sincerely,

*BJ Adams-Robinson*

Brenetia Adams-Robinson
Division HR Manager, DFCS-OFI

c: Durell Price – OFI Deputy Field Operations Director

Copy from re:SearchGA

# *EXHIBIT "20"*

Copy from re:SearchGA

**Annual Performance Review**

# Manager Evaluation - Acknowledge

Quinette Westbrooks

**Job Title:** Economic Support Spec 2
**Document Type:** Annual Performance Review
**Template:** Annual Performance Review
**Status:** Acknowledged

**Manager:** Marian Dudley
**Period:** 07/01/2018 - 06/30/2019
**Document ID:** 1263148
**Due Date:** 07/31/2019

This document is currently waiting for your acknowledgment. Select the Acknowledge button to confirm that you and your manager have discussed this document. Your name will be placed in the signature section on the printed document acknowledging that the review was held.

## Section 1 - Core/Individual Competencies

████████████████████████████████████████████████████

Description :

Understands that all employees have external and/or internal customers that they provide services and information to; honors all of the State's commitments to customers by providing helpful, courteous, accessible, responsive, and knowledgeable service.

- Critical: Yes

**Manager Rating:** 4-Successful Performer - Plus      4.00

**Manager Comments:** Mrs. Westbrooks willingly provides assistance and useful information to meet customer needs; takes appropriate actions to provide accurate information to customers; assumes ownership of customer issues and takes appropriate steps to correct problems as they arise. Ms Westbrooks is committed to providing excellent Customer Service. She greets Customers promptly, shows respect and  continuously honors the States Committment to excellence.

**Created By :**   Template            09/07/2018  4:10AM

████████████████████████████████████████████████████

Description :

Cooperates with others to accomplish common goals; works with employees within and across his/her department to achieve shared goals; treats others with dignity and respect and maintains a friendly demeanor; values the contributions of others.

- Critical: Yes

**Manager Rating:**  3-Successful Performer           3.00

Copy from re:SearchGA

**Manager Comments:** Mrs. Westbrooks cooperates with others to accomplish common goals; works with employees within and across his/her department to achieve shared goals; treats others with dignity and respect and maintains a friendly demeanor; values the contributions of others. She treats all team members with a respectful, courteous, and professional manner; supports team despite different points of view or setbacks.  Mrs. Wesbrooks consistently works well with a variety of different people; rarely encounters someone he/she cannot work effectively with on a task/project.

| Created By : | Template | 09/07/2018  4:10AM |
|---|---|---|

Description :

Consistently delivers required business results; sets and achieves achievable, yet aggressive, goals; consistently complies with quality standards and meets deadlines; maintains focus on Agency and State goals.

- Critical: Yes

**Manager Rating:** 3-Successful Performer          3.00

**Manager Comments:** Mrs Westbrooks establishes and achieves clear, specific performance goals, expectations, and priorities . She a ligns the efforts of herself and the team to the team's objectives; uses resources as expected, resulting in quality work that stays within established budgets and she also manages her own time well in order to complete allocated tasks on time and with high quality.

| Created By : | Template | 09/07/2018  4:10AM |
|---|---|---|

Description :

Copy from re:SearchGA

Accepts full responsibility for self and contribution as a team member; displays honesty and truthfulness; confronts problems quickly; displays a strong commitment to organizational success and inspires others to commit to goals; demonstrates a commitment to delivering on his/her public duty and presenting oneself as a credible representative of the Agency and State to maintain the public's trust.

- Critical: Yes

**Manager Rating:** 3-Successful Performer          3.00

**Manager Comments:**   Mrs Westbrooks holds herself and others accountable for making principled decisions; addresses unethical behaviors head-on. She committed to the State's goals and finds ways to get team members more involved toward accomplishing State objectives. She also takes his/her responsibilities seriously and consistently meets the public's expectations for quality, service, and professionalism.

**Created By :**   Template          09/07/2018  4:10AM

Description :

Analyzes problems by evaluating available information and resources; develops effective, viable solutions to problems that can help drive the effectiveness of the department and/or State of Georgia.

- Critical: Yes

**Manager Rating:** 3-Successful Performer          3.00

**Manager Comments:**   Mrs. Westbrooks is able to cope with uncertainty and an incomplete set of facts to develop a feasible and effective solution. She uses established standards/methods to solve common problems; responds to recurring problems by investigating the underlying causes and taking steps to eliminate them ands she idependently analyzes issues and problems and expresses his/her opinion to others.

Created By :   Template              09/07/2018  4:10AM

**Manager Rating:** 3-Successful Performer          3.20
**Summary Weight:** 25%   (not less than 25%)

**Manager Comments:**
Mrs. Westbrooks has met in all areas of Core/individual Competencies for this performance period.

## Section 2 - Individual Goals

Description :

During the rating period, the federally established performance standards will be met.  (This will be measured by the overall performance of the State / District.)

| Program | Standard | |
|---|---|---|
| FS - Expedited | | 100% |
| FS - Unexpedited | | 97% |
| FS Combined | 95% | |
| FM | 96% | |
| TANF | | 96% |
| ABD | | 96% |
| Child Care | | 96% |

Copy from re:SearchGA

**Manager Rating:** 3-Successful Performer                    3.00

**Manager Comments:** Mrs. Westbrooks was very instrumental in assisting the State improve, meet and at times exceed our goals in SOP for SNAP and Medicaid programs to ensure timely issuance of benefits to Georgia Families.

FS SOP - 93.5% to 88.1 to 94.7%
FM SOP - 93.0% to 86.7% to 89.2%

| Created By : | Marian Dudley | 09/09/2018 11:21PM |
| Last Modified By : | Marian Dudley | 09/09/2018 11:21PM |

**Description :**

During the rating period, the federally / state established Work Participation Rate for TANF of 50% /60 % will be met.  (This will be measured by the overall performance of the State / District.)

**Manager Rating:** N-Not Rated                    0.00
**Manager Comments:**

| Created By : | Marian Dudley | 09/09/2018 11:22PM |

**Description :**

Maintain accuracy rate of 95% or higher for all programs based on internal quality checks; follows documentation standards; follows initiatives associated with QIP or external audit trend findings (QC, QA, &CAPER); makes progress towards stated goal(s).

**Manager Rating:** 3-Successful Performer                    3.00

**Manager Comments:** Mrs. Westbrooks has been  very instrumental in assisting the State improve and meet goals in SNAP and MA accuracy to ensure correct issuance of benefits to Georgia families.The documentation standards and

Copy from re:SearchGA

CAPERs are a work in progress. Mrs. Westbrooks addresses  applications timely enough as to meet SOP and  timely enough as to not negatively affect the CAPER for the State of Georgia..

Positive allotment error rate - 7.8% to 6.6% to 0%
Negative error rate - 90.5% to 91.5% to 71.4%

Created By :   Marian Dudley          09/09/2018 11:23PM

Description :

Understands the need for productivity standards that will be required for specific job responsibilities.  Currently maintains a productivity rating that meets the current state expectation. OFI defines "responsive customer service" as returning customer calls within 2 business days and determining the root cause of customer complaints.

**Manager Rating:** 3-Successful Performer          3.00

**Manager Comments:**  Mrs. Westbrooks has met expectations in productivity for this performance period. She does understand the need for productivity standards that will be required for specific job responsibilities. Currently maintains a productivity rating that meets the current state expectation.  She does make contact with customers in determining  the cause of Customers complaints and make sure complaints are processed.

Created By :   Marian Dudley          09/09/2018 11:23PM

Description :

Completes required or mandated yearly trainings and follows procedures regarding the correct administration of these policies; understands his or her job specific role as it relates to the daily practice of these policies and procedures. Assists with assigned emergency activities in conjunction with local emergency management, Red Cross, and other community partners as directed through state/local preparedness plans.

Copy from re:SearchGA

**Manager Rating:** 4-Successful Performer - Plus        4.00

**Manager Comments:** Mrs. Westbrooks attends the required yearly trainings and follows procedures regarding the correct administration of these policies; She understands her job specifficly as it relates to the daily practice of these policies and procedures. Mrs Westbrooks has a passion for people. This is exemplified in her approach to dealing with customers. She goes the extra mile in caring for LEPSI Customers. She makes it a priority to see all of her customers are treated with respect while receiving timely and accurate benefits.

Created By :   Marian Dudley          09/09/2018 11:24PM

Description :

1.  OFI Staff will participate in Child Welfare Staffings and will work closely with other community partners to keep kids safe and strengthen families.  2.  Builds consensus and collaboration among community partners, staff and stakeholders to develop local strategies and to enhance services to families, especially in SNAP Works and TANF cases.

**Manager Rating:**  N-Not Rated                0.00
**Manager Comments:**

Created By :   Marian Dudley          09/09/2018 11:26PM

Description :

- Adheres to established work schedules performing agency related activities only

- Requests and Uses leave appropriately

- Adheres to established dress code
- Adheres to all security measures with computer and facility access

- Uses agency equipment appropriately (non-personal use)
- Does not report to work under the influence of drugs or alcohol

- Maintains confidentiality of client information

Submits all required documents and reports timely.

**Manager Rating:** 3-Successful Performer          3.00

**Manager Comments:** Mrs. Westbrooks has met all of the expectations in this category of following all other rules and policies.

Created By :   Marian Dudley                09/09/2018 11:28PM

**Manager Rating:** 3-Successful Performer          3.20
**Summary Weight:** 50%

**Manager Comments:**
Mrs. Westbrooks has met the expectations of Individual goals.

## Section 3 - Job Responsibilities

Description :

Determines eligibility for Economic Support program(s) by, but not limited to, reviewing documents for required information; interviewing clients as needed; documenting points of eligibility in the system according to documentation standards; requesting and obtaining verification; entering the appropriate coding; etc

| | | |
|---|---|---|
| **Manager Rating:** | 3-Successful Performer | 3.00 |

**Manager Comments:** Mrs Westbrooks determines eligibility for Economic Support program(s) ( MA and Food Stamps) by reviewing documents for required information; interviewing clients as needed; documenting points of eligibility in the system according to documentation standards; requesting and obtaining verification; entering the appropriate coding; etc

Created By :   Marian Dudley          09/09/2018 11:31PM

Description :

- Includes, but not limited to, scheduling interview appointments as necessary; registering applications; scanning and / or retrieving documents via DIS; assisting clients with obtaining verification; prioritizing activities to meet eligibility determination standards; aligns period of eligibility end dates across all related cases of the household; etc.

| | | |
|---|---|---|
| **Manager Rating:** | 3-Successful Performer | 3.00 |

**Manager Comments:** Mrs. Westbrooks schedules and interview appointments as necessary; registering applications when needed; scanning and/or retrieving documents via DIS; assisting clients with obtaining verification; prioritizing activities to meet eligibility determination standards; aligns period of eligibility end dates across all related cases of the household; etc.

Created By :   Marian Dudley          09/09/2018 11:31PM

Copy from re:SearchGA

Description :

- Demonstrates a commitment to professional development by attending / actively participating/ completing state mandated trainings; attending team / unit / section / district / state meetings to enhance expertise and knowledge in the field.
- Maintains policy and procedural knowledge; etc.
- Attends and prepares for all worker conferences to discuss work completed monthly.

**Manager Rating:** 3-Successful Performer          3.00

**Manager Comments:** Mrs. Westbrooks has met the expectations in this area. She has demonstrated her commitment to developing professionally by attending, completing, and actively participating in state mandated trainings in an effort to enhance expertise and knowledge in the field. She maintains policy and procedural knowledge accordingly. Mrs Westbrooks actively participates in the State's perfomance Management Process, Including Focusing on improving performance through learning and development.

**Created By :**   Marian Dudley          09/09/2018 11:32PM

Description :

Provides support to the team leadership by assisting in the development and facilitation of training; mentors staff; conducts case accuracy reviews; responds to customer complaints and service inquiries; acts as alternate supervisor in their absence; etc.

**Manager Rating:** 3-Successful Performer          3.00

**Manager Comments:** Mrs. Westbrooks does provides support to the team leadership by assisting in the development and facilitation of training; mentors staff; responds to customer complaints and service inquiries; acts as alternate supervisor in my absence.  Mrs. Westbrooks has met the expectations in this area.

Copy from re:SearchGA

Created By :   Marian Dudley          09/09/2018 11:33PM

**Manager Rating:** 3-Successful Performer          3.00
**Summary Weight:** 25%

**Manager Comments:** Mrs. Westbrooks takes full responsibility for her job and the items in this area. She has met the expectations in Job Responsibilities. She has demonstrated her commitment to focusing on improving performance through learning and meeting the expectations of the State of Georgia in fulfilling her job Responsibilities.

## Section 4 - Employee Comments

**Employee Comments:**

## Section 5 - Manager Comments

**Manager Comments:**
Mrs. Westbrooks is a Veteran worker that works really hard to ensure that the customers have a pleasant experience with DFCS while eligibility determination is being made on their SNAP and Medicaid Cases. She has a very positive attitude and a very optimistic outlook towards the future of the programs we administer. She is also very motivated in making sure she meets Standards of Promtness in her work daily.

## Section 6 - Overall Summary

/

Copy from re:SearchGA

**Manager Rating:** 3-Successful Performer          3.15

**Manager Comments:**

Mrs. Westbrooks is a Veteran worker that works really hard to ensure that the customers have a pleasant experience with DFCS while eligibility determination is being made on their SNAP and Medicaid cases. She has a very positive attitude and a very optimistic outlook towards the future of the programs we administer. She is also very motivated in making sure she meets Standards of Promptness in her work daily.

## Section 7 - Individual Development Plan

## Section 8 - eSignature Section

05/15/2019  2:23:24PM

_____
Employee Signature                              Date

_____
Manager Signature                               Date